Herbert L. FISCHER, Floyd L. Adams, James W. Alfreds, John I. Arena, Earl T. Atkinson, William Auve, Thomas F. Beck, William J. Bono, William A. Burwell, Jr., Joseph C. Calabrese, Peter Carfagno, John B. Creighton, Ralph J. DaFermo, Sr., Felix A. DeJoseph, Joseph A. DeVito, John T. Dougherty, John J. Dowling, Anthony Falasca, Eugene Fink, Rita J. Gesualdo, Joseph L. Giorgio, Edwin Haines, Joseph T. Haley, Daniel J. Hefferan, Leo M. Hill, Robert J. Hoopes, Donald J. Hoy, Michael Hrynko, Donald Hughes, Carl M. Hunsicker, Neal Ireland, Walter D. Kraus, Charles E. Lindemuth, Robert F. Mahoney, Anthony D. Marchesani, Robert P.F. McCarron, Robert McCormick, Frank L. Mercadante, John P. Monaghan, David Monzo, John K. Moore, Joseph P. Moran, Mildred Pearl Morgan, Ralph E. Moyer, Herbert E. Mueller, James J. Nugent, Thomas E. Oetzel, Frank W. Persichetti, Sr., Charles W. Plummer, Lewis Raibley, James J. Roddy, John J. Saunders, Louis F. Saunders, Nicholas J. Screnci, Joseph J. Semetti, John Steindl, William F. Thompson, Michael W. Trendler, Francis R. Tunney, Sr., Herbert R. Walters, Richard S. Wilson, John H. Zimmer and Gerald A. Zimmerman, Appellants,

v.

The PHILADELPHIA ELECTRIC COMPANY; Joseph F. Paquette, Jr.; Michael J. Crommie; Service Annuity Plan of Philadelphia Electric Company, Appellees.

No. 92-1684.

United States Court of Appeals, Third Circuit.

Argued Feb. 26, 1993.

Decided May 26, 1993.

Sur Petition for Rehearing July 20, 1993.

Ronald L. Wolf (argued) and Martina W. McLaughlin, Litvin, Blumberg, Matusow & Young, Philadelphia, PA, for appellants.

David H. Marion (argued), Elizabeth A. Read and Kimberly H. Humes, Montgomery, McCracken, Walker & Rhoads, Philadelphia, PA, for appellees.

Before: MANSMANN, SCIRICA and FEINBERG,* Circuit Judges.

## OPINION OF THE COURT

FEINBERG, Circuit Judge:

Herbert L. Fischer appeals on behalf of a class of former employees of the Philadelphia Electric Company (PECo or the Company) from an order of the United States District Court for the Eastern District of Pennsylvania denying his motion for summary judgment and granting that of PECo.[1] Fischer alleged that the Company violated the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 et seq. This appeal primarily requires us to decide whether summary judgment for PECo was proper on the record before us.

### Background

Joseph F. Paquette, Jr. became PECo's Chief Executive Officer and Chairman of the Board in 1988. At that time, he was concerned that PECo's staffing levels, total wages and other costs were as high or higher than the average for the utility industry. In particular, PECo had a higher number of employees per customer than did its competitors. Apparently in response to these concerns, PECo requested a $549 million rate increase from the Public Utility Commission (PUC) in July 1989. PECo knew that the PUC would make its final decision on the rate increase in April 1990. In the meantime, the Company began to look for ways to reduce costs and hired an outside consultant, McKinsey & Company (McKinsey), to develop a long-range strategic plan for cost-reduction.

In October 1989, PECo learned that the PUC staff had recommended that PECo receive only $220 million of its requested increase. Despite this news, Paquette said in a speech in December 1989 on the "state of the

---

* Honorable Wilfred Feinberg of the United States Court of Appeals for the Second Circuit, sitting by designation.

1. The named defendants are PECo, Joseph F. Paquette, Jr., Michael J. Crommie, and PECo's Service Annuity Plan, an employee pension benefits plan as defined by ERISA. The defendants will be collectively referred to as "PECo."

company" that he was optimistic that PECo would get the entire increase it requested. In responding to a question after the speech as to whether an early retirement plan had been discussed as a cost-cutting option, Paquette answered that if the Company had to reduce the number of its employees, attrition would be the preferred means of doing so, possibly accelerated by an early retirement plan. Layoffs would be a last resort.

In March 1990, an administrative law judge issued an interim ruling on PECo's requested increase, recommending that the Company be granted only $117 million, 21% of its total request. In the month before that ruling, PECo had formed a Cost Management Team to identify ways to reduce the Company's costs. Kenneth Lefkowitz, Manager of PECo's Compensation and Benefits Division, began outlining options to reduce the work force and contacted the actuarial firm of Towers, Perrin, Forster & Crosby (TPF & C) for assistance. TPF & C later sent Lefkowitz a confidential memorandum outlining three different methods of reducing the number of PECo employees, including an early retirement plan. PECo had considered such a plan in 1988, but it was never put into effect. Early in April 1990, McKinsey presented PECo's Board of Directors and top management with its list of ways to reduce costs. An early retirement plan was one of them.

The PUC issued its final order on April 19, 1990, granting PECo less than 50% of its total request. PECo responded swiftly to this decision. On that same day, Paquette wrote a letter to all employees, including those who had already announced their decision to retire, reporting the PUC's action and its financial impact on the Company. Even though no proposal had as yet been made to PECo's Board of Directors, Paquette indicated in his letter that he was going to "recommend that our Board approve an early retirement program." Paquette soon did so, and the plan, which was formally approved by the Board of Directors on May 25, provided certain options that benefitted those employees who elected to retire between July 15 and September 15, 1990.

While all this was going on, some of PECo's employees were thinking about retiring. It was PECo's practice to have prospective retirees notify the Company a few months before they wished to retire so that a retirement interview could be held. The purpose of the interview was to provide the employee with information about retirement, including pension amount and options for life insurance. During the period of time relevant here, the majority of these interviews were conducted by Senior Benefits Counselor Jack McCartney, although two other counselors would fill in on an "as-needed" basis. All of these employees were under the supervision of Michael J. Crommie, the Director of the Benefits Division of PECo's Human Resources Department.

Six months before the early retirement plan was announced, rumors about it had already begun to circulate among PECo's employees. Prompted by these rumors, some prospective retirees asked the benefits counselors about the possibility that such a plan would be adopted. Until April 19, 1990, the date on which Paquette announced he would recommend a plan to the Board, the counselors answered that no plan was being considered, or that they had no knowledge of any plan. As far as the benefits counselors knew, they were telling the truth since the Company had not kept them abreast of any discussions taking place among senior management. Moreover, Director Crommie had instructed his counselors that if interviewees asked any questions, they were to be told "exactly what the plan called for at that time."

The plaintiffs in this case are PECo employees who retired on January 1, 1990, February 1, 1990, March 1, 1990 and April 1, 1990 and were therefore ineligible to obtain the benefits provided by the early retirement plan, but otherwise would have been eligible. Plaintiffs alleged that PECo breached its fiduciary duties under § 404 of ERISA; that PECo is estopped from denying the class members increased pension benefits; and that PECo engaged in discriminatory conduct in violation of § 510 of ERISA. After the class was certified, the parties cross-moved for summary judgment. The district court granted PECo's motion and denied plaintiffs' motion.

This appeal followed.

## Discussion

■ Our review of an order granting summary judgment is plenary. "[S]ummary

judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). "However, when the record is such that it would not support a rational finding that an essential element of the nonmoving party's claim or defense exists, summary judgment must be entered for the moving party." *Turner v. Schering–Plough Corp.*, 901 F.2d 335, 341 (3d Cir.1990) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986)).

## A. Breach of Fiduciary Duty

ERISA allows employers "to wear 'two hats,'" *Amato v. Western Union Int'l, Inc.*, 773 F.2d 1402, 1416 (2d Cir.1985), *cert. dismissed*, 474 U.S. 1113, 106 S.Ct. 1167, 89 L.Ed.2d 288 (1986), and PECo did so. It was both an employer and a plan administrator. As an employer, neither PECo nor its business decision to offer an early retirement program were subject to ERISA's fiduciary duties. *See, e.g., Payonk v. HMW Indus., Inc.*, 883 F.2d 221, 225 (3d Cir.1989). As a plan administrator under ERISA, however, PECo was a fiduciary and was required, among other things, "to discharge [its] duties 'solely in the interests of the participants and beneficiaries.'" *Donovan v. Bierwirth*, 680 F.2d 263, 271 (2d Cir.) (quoting 29 U.S.C. § 1104(a)(1)), *cert. denied*, 459 U.S. 1069, 103 S.Ct. 488, 74 L.Ed.2d 631 (1982).

Plaintiffs concede that PECo had the right as an employer to make the business decision of how much and when to enhance pension benefits, but argue that PECo also had an obligation under ERISA to tell the truth about such decisions when asked by plan participants. For this proposition, plaintiffs rely principally on *Berlin v. Michigan Bell Tel. Co.*, 858 F.2d 1154 (6th Cir.1988), which, they assert, this court embraced in *Payonk v. HMW Indus., Inc.*, 883 F.2d 221 (3d Cir. 1989). According to plaintiffs, PECo breached its obligation through a "conspiracy of silence among senior management aimed at keeping confidential the considerable efforts being taken to implement an early retirement incentive program."

In *Berlin*, Michigan Bell announced that it would offer early retirement benefits to employees who retired between June 1 and July 31, 1982. This retirement "sweetener" was announced in June 1982, but plaintiffs there alleged that Michigan Bell had been considering such a plan as early as December 1, 1980. The plaintiffs in *Berlin* were employees of Michigan Bell who retired after December 1, 1980 but before June 1, 1982 and who were consequently unable to take advantage of the sweetener. According to the *Berlin* plaintiffs, Michigan Bell breached its fiduciary obligations under ERISA by misleading them into believing that no early retirement plan was in the offing when such a plan was in fact being seriously considered. *See Berlin*, 858 F.2d at 1158.

The *Berlin* court recognized that a "purely business decision[ ]," such as a decision "to reduce the amount of unaccrued plan benefits" or to establish or terminate a plan, is not subject to ERISA's fiduciary duties. *Id.* at 1163. But the court rejected the view that "any communications or representations made prior to such a decision were also nonfiduciary." *Id.* The court held that "a fiduciary may not materially mislead those to whom the duties of loyalty and prudence described in 29 U.S.C. § 1104 are owed." *Id.* More specifically, it held that once Michigan Bell gave "serious consideration" to offering additional benefits, it was under an obligation as plan fiduciary "not to make misrepresentations, either negligently or intentionally, to potential plan participants concerning [the offering]." *Id.* at 1163–64; *accord Drennan v. General Motors Corp.*, 977 F.2d 246, 251 (6th Cir.1992); *Baumgardner v. Inco Alloy Int'l, Inc.*, 746 F.Supp. 623, 627 (E.D.La. 1990); *cf. Barnes v. Lacy*, 927 F.2d 539, 544 (11th Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 372, 116 L.Ed.2d 324 (1991).

In *Payonk*, we considered a factual scenario akin to that presented in *Berlin.* HMW Industries (HMW) had two subsidiaries, referred to in *Payonk* as Metals and Wallace, both of which announced new employee benefits plans after being acquired by another corporation. Some Metals and Wallace employees opted to participate in these plans, rolling over their contributions from HMW's plan—the plan in which they had formerly participated—into the new ones. Later, HMW decided to terminate its plan, distrib-

ute the surplus and establish a new plan of its own. In accordance with federal regulations, HMW notified plan participants 10 days before the scheduled termination of the plan. *See Payonk*, 883 F.2d at 222–24.

Metals and Wallace employees who were ineligible to share in the surplus because they had rolled over their contributions before the HMW plan was terminated sued HMW under ERISA, arguing that HMW was under a fiduciary duty to disclose the termination even before the 10–day period specified in the federal regulations. Unlike the plaintiffs in *Berlin*, however, the plaintiffs in *Payonk* made no claim that HMW had mislead them about its intention to terminate the plan. *See id.* at 226. Judge Garth's opinion in *Payonk* noted this crucial distinction and went on to hold that "an employer's lawful termination decision, *absent affirmative misrepresentations designed to mislead plan participants*, is not governed by ERISA's standards of fiduciary duties." *Id.* at 229 (emphasis supplied). None of the three opinions of the panel in *Payonk* expressed disapproval of the result in *Berlin* on the facts of that case.[2]

On its face, the present case appears closer to the facts of *Berlin* than to those of *Payonk*. In *Payonk*, the "record reveal[ed] no claims or assertions that HMW had misrepresented its termination decision." *Id.* at 226. In *Berlin*, by contrast, the "pivotal allegation" of the complaint was that Michigan Bell had "either knowingly or negligently made material misrepresentations" regarding a change to the plan during a period of time in which the change was under "serious consideration." *Berlin*, 858 F.2d at 1160, 1163. The same is true here. The entire basis for plaintiffs' complaint is that PECo, mainly through its benefits counselors, misrepresented what was really going on when members of the plaintiff class asked if the Company was considering an early retirement plan.

■ Yet, the district court here held that the facts of this case are more like those in *Payonk*, not *Berlin*. The court reached this conclusion because it found "no evidence of

affirmative material misrepresentation by a fiduciary or non-fiduciary of PECo." Although we have no quarrel with the proposition, derived from *Payonk*, that a fiduciary may not make affirmative material misrepresentations, we believe that the district court's characterization of the record was incorrect.

Consider first the statements made by Michigan Bell in *Berlin*. For example, when Michigan Bell's Vice–President–Personnel "spoke to different groups" of lower-level managers and potential beneficiaries of an early retirement plan, he was consistently asked about the possibility of such a plan being implemented. Just as consistently, he would "respond[ ] with '[c]omments to the extent that there were no current plans to offer [an early retirement plan].'" *Id.* at 1159. Similarly, the "stock answer" given by the district manager of Michigan Bell's Benefits Office was that there were " 'no plans for a[n] [early retirement plan]....'" *Id.*

Now consider the statements allegedly made by PECo. One employee said in answer to interrogatories that when he asked Counselor McCartney (who conducted most of the retirement interviews) about an early retirement plan, McCartney "told [him] absolutely not for at least the next five years." Another indicated that McCartney "stated there was definitely nothing in the planning." According to another, McCartney said that "there was no word of any early out incentive plan. (sweetener) but not to worry because Philadelphia Electric would take care of me if there was any change in the present retirement policy." Still another employee asked Director Crommie himself "whether there would be a sweetener package coming out on or about the time [he] would retire," to which "Crommie said there would be no such action." Finally, consider the statement in the record before us of one employee who retired on March 1, 1990, less than two months before Paquette's April 19 letter announcing the early retirement plan.

**2.** Judge Stapleton filed a concurring opinion. He "join[ed] in affirming the district court ... because [he] believe[d] that the information HMW and the other defendants [were] accused of having withheld was held by them in a fiduciary capacity for the corporation and its stockholders and not in a fiduciary capacity for plan participants." *Payonk*, 883 F.2d at 231. Ac-

cordingly, he could "perceive no basis for imposing a duty of disclosure" upon defendants. *Id.* at 232. Judge Mansmann dissented, concluding that "HMW had a duty under both § 404 of ERISA (29 U.S.C.A. § 1104) and § 16.2 of the HMW Plan to inform the participants, facing a decision of whether to withdraw from the Plan, of the impending termination." *Id.* at 236.

If I had only known of the retirement package I would have waited to retire. I had 41 years of dedicated service to PECo. My family was just as dedicated day and night for 41 years. I feel that we should have been told of the sweetener. If I knew one was coming I would have waited to retire. I feel hurt and deceived that I was not given the opportunity of the early retirement package.

To our ear, the alleged responses given above echo those given by Michigan Bell in *Berlin,* and they suffice to preclude summary judgment.

■ Nonetheless, PECo argues that these communications cannot be characterized as "affirmative misrepresentations" because "when the benefits counselors . . . stated that they knew of no [early retirement] plan, their representations were correct." The counselors were telling the truth, PECo explains, because the Company had never told them it was considering an early retirement plan. Moreover, Director Crommie apparently decided to keep himself out of the loop: According to plaintiffs, Crommie said in his deposition, "[I]f management wanted me to know anything, they would have instructed me so." This explanation will not do, for the fiduciary obligations owed to the plan participants were owed by *PECo* as plan administrator. These obligations cannot be circumvented by building a "Chinese wall" around those employees on whom plan participants reasonably rely for important information and guidance about retirement.

■ As did the court in *Berlin,* we hasten to add that ERISA does not impose a "duty of clairvoyance" on fiduciaries. *Id.* at 1164. An ERISA fiduciary is under no obligation to offer precise predictions about future changes to its plan. Rather, its obligation is to answer participants' questions forthrightly, "a duty that does not require the fiduciary to disclose its internal deliberations nor interfere with the substantive aspects of the [collective] bargaining process." *Drennan,* 977 F.2d at 251 (citing *Payonk,* 883 F.2d at 226); *cf. Eddy v. Colonial Life Ins. Co.,* 919 F.2d 747, 751 (D.C.Cir.1990) ("This duty to communicate complete and correct material information about a beneficiary's status and options is not a novel idea."). A plan administrator may not make affirmative material misrepresentations to plan participants about changes to an employee pension benefits plan. Put simply, when a plan administrator speaks, it must speak truthfully.

■ The content of the particular communications PECo allegedly made to members of the plaintiff class and whether such communications constituted affirmative misrepresentations are questions of fact properly left to the trier of fact on remand. *See Berlin,* 858 F.2d at 1164; *Drennan,* 977 F.2d at 251. Whether an affirmative misrepresentation was "material," however, is a "mixed question of law and fact." *Cf. Shapiro v. UJB Fin. Corp.,* 964 F.2d 272, 280 n. 11 (3d Cir.), *cert. denied,* ── U.S. ──, 113 S.Ct. 365, 121 L.Ed.2d 278 (1992). In the present context, a misrepresentation is material if there is a substantial likelihood that it would mislead a reasonable employee in making an adequately informed decision about if and when to retire. *Cf. Basic Inc. v. Levinson,* 485 U.S. 224, 232–41, 108 S.Ct. 978, 983–88, 99 L.Ed.2d 194 (1988) (applying materiality standard to preliminary merger discussions); *TSC Indus., Inc. v. Northway, Inc.,* 426 U.S. 438, 449, 96 S.Ct. 2126, 2132, 48 L.Ed.2d 757 (1976) (elaborating concept of materiality in context of proxy solicitation). Included within the overall materiality inquiry will be an inquiry into the seriousness with which a particular change to an employee pension plan is being considered at the time the misrepresentation is made. All else equal, the more seriously a plan change is being considered, the more likely a misrepresentation, e.g., that no change is under consideration, will pass the threshold of materiality.

Summary judgment on "the question of materiality" is appropriate only if "reasonable minds cannot differ." *Id.* at 450, 96 S.Ct. at 2133 (internal quotations omitted). In the present case, there remain, among other things, open questions of how seriously PECo was considering an early retirement program at the times when the plaintiffs made the various inquiries that elicited the alleged misrepresentations. On the record before us, therefore, we believe it inappropriate to rule, as a matter of law, on the materiality of the misrepresentations allegedly made by PECo to the plaintiffs.

## B. *Estoppel & Discrimination*

■ In addition to urging breach of fiduciary duty as a basis for recovery, plaintiffs seek to recover on a theory of estoppel, arguing that "estoppel is available as a federal common law remedy under ERISA to recover benefits which the plaintiffs did not receive as a result of the defendants' misleading statements." Plaintiffs also seek to recover under § 510 of ERISA, which makes it "unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan ... or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan...." 29 U.S.C. § 1140.

The district court concluded that neither estoppel nor § 510 could provide a basis for recovery, in part because it believed there was no genuine issue of material fact as to whether or not PECo had made affirmative material misrepresentations. For reasons given above, we think that there are such issues, which remain to be resolved in the district court. Therefore, we also remand on plaintiffs' claims of estoppel and discrimination without in any way suggesting a view on the merits.

For the foregoing reasons, the judgment of the district court granting summary judgment for PECo will be reversed and the case will be remanded for proceedings consistent with this opinion. For the same reasons, plaintiffs' request that we order the district court to enter summary judgment in their favor will be denied.

Before: EDWARD R. BECKER, STAPLETON, MANSMANN, GREENBERG, HUTCHINSON, SCIRICA, COWEN, NYGAARD, ALITO, ROTH, LEWIS, Circuit Judges, and FEINBERG,** Senior Circuit Judge.

## SUR PETITION FOR REHEARING

July 20, 1993.

The petition for rehearing filed by appellees in the above entitled case having been submitted to the judges who participated in the decision of this court and to all other available circuit judges of the circuit in regular active service, and no judge who concurred in the decision having asked for rehearing, and a majority of the circuit judges of the circuit in regular active service not having voted for rehearing by the court in banc, the petition for rehearing is denied. Judges Stapleton, Hutchinson and Roth would grant rehearing.