

1995 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-9-1995

# Taylor v Peoples Nat Gas Co

Precedential or Non-Precedential:

Docket 94-3109

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1995

Recommended Citation

"Taylor v Peoples Nat Gas Co" (1995). *1995 Decisions.* Paper 69.
http://digitalcommons.law.villanova.edu/thirdcircuit_1995/69

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1995 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————————————

NO. 94-3109

———————————————

THOMAS H. TAYLOR,

Appellant

v.

THE PEOPLES NATURAL GAS COMPANY,
a subsidiary of Consolidated Natural Gas Company;
SYSTEM PENSION PLAN OF CONSOLIDATED NATURAL GAS COMPANY,
Number 001; THE ANNUITIES AND BENEFITS COMMITTEE,
the plan administrator,

Appellees

———————————————————————————————————

On Appeal From the United States District Court
For the Western District of Pennsylvania
(D.C. Civ. No. 92-cv-00394)

———————————————————————————————————

Argued: September 19, 1994

Before: BECKER, COWEN, Circuit Judges, and
POLLAK, District Judge.[*]

(Filed: March 9, 1995)

THOMAS P. COLE, II, ESQUIRE (ARGUED)
15 East Otterman Street
Greensburg, PA  15601-2591

Attorney for Appellant


P. JEROME RICHEY, ESQUIRE (ARGUED)
PHILIP J. WEIS, ESQUIRE
MARK T. PHILLIS, ESQUIRE

———————————————

     * Honorable Louis H. Pollak, United States District Judge
for the Eastern District of Pennsylvania, sitting by designation.

Buchanan Ingersoll
Professional          Corporation
58th Floor, USX Tower
600 Grant Street
Pittsburgh, PA  15219

JOYCE C. DAILEY, ESQUIRE
Peoples Natural Gas Company
625 Liberty Avenue
Pittsburgh, PA  15222

Attorneys for Appellees


ROBERT E. WILLIAMS, ESQUIRE
DOUGLAS S. McDOWELL, ESQUIRE
McGuiness & Williams
1015 Fifteenth Street, N.W.
Washington, DC  20005

Attorneys for Amicus Curiae
Equal Employment Advisory Council

_____

OPINION OF THE COURT

_____


BECKER, Circuit Judge.

This appeal arises out of an ERISA action brought by Thomas H. Taylor, a former employee of Peoples Natural Gas Company ("PNG"), against the members of the Annuities and Benefits Committee ("the defendants"), which is the plan administrator of PNG's pension plan. The district court granted summary judgment for the defendants. The gravamen of Taylor's claim is that statements regarding the retroactivity of the pension plan's early retirement incentive program, made to him by PNG's Supervisor of Employee Benefits, John Burgunder, who was not a member of the Annuities and Benefits Committee, constituted

a breach of the defendants' fiduciary obligation to communicate complete and correct material information to plan participants regarding their status and options under an employee benefit plan.  The Equal Employment Advisory Council has filed an amicus curiae brief in support of the defendants.

Because Burgunder's statements form the basis of Taylor's suit against the defendants and Taylor has not sued Burgunder, we first, as a matter of logic, address the important question presented -- whether a plan administrator is liable for statements made by individuals who have been selected as non-fiduciary agents by the plan administrator to assist it in discharging its fiduciary obligation to administer a plan, even though such individuals are formally employees of the plan sponsor, who is not a fiduciary.  We answer this question in the affirmative, and conclude that the defendants are responsible for any material misstatements made by Burgunder to Taylor regarding possible changes in PNG's pension plan since, in counseling Taylor, Burgunder was acting, at a minimum, within his apparent authority as an agent of the defendants.  We will, however, affirm the judgment because the statements allegedly made by Burgunder do not, as a matter of law, constitute a misrepresentation of a material fact.

## I.

PNG sponsors a pension plan along with its parent corporation, Consolidated Natural Gas Company ("CNG").  The named fiduciary and plan administrator of the pension plan is the Annuities and Benefits Committee, which is made up of employees

of both CNG and PNG.  The members of this committee are the relevant defendants in this action.[1]  Burgunder was not a member of the Annuities and Benefits Committee.

During 1988, PNG hired several outside consulting firms to conduct efficiency studies to examine ways to decrease costs and increase the efficiency of the company's operations.  In connection with these studies, PNG considered several downsizing options, including the offer of an early retirement incentive program through the company's pension plan.  Taylor, who was employed during this period as a general manager in PNG's Information System department, participated in the efficiency studies and submitted a report to his boss, Scotty Amos, in which he concluded that, if certain changes were implemented, Taylor's department could operate with six fewer employees.  In his report

---

[1]     Taylor also has brought a claim against PNG, alleging a breach of its fiduciary obligations under ERISA.  The Magistrate Judge granted PNG's motion for summary judgment on this claim, concluding that, under the circumstances, PNG was not subject, in its capacity as plan sponsor, to ERISA's fiduciary obligations. We agree.  While "ERISA allows employers to wear two hats" and act both as plan sponsor and plan administrator, an employer can elect to wear only its plan sponsor "hat" and may designate, pursuant to ERISA § 402(a)(1), 29 U.S.C.A. § 1102(a)(1) (1985), a separate entity as plan administrator. Fischer v. Philadelphia Electric Co., 994 F.2d 130, 133 (3d Cir.), cert. denied 114 S. Ct. 622 (1993) (internal quotation marks omitted).  PNG has made such an election and has designated the Annuities and Benefits Committee as plan administrator. Given this election, PNG is not subject, in its capacity as employer/plan sponsor, to ERISA's fiduciary obligations.  See id., 994 F.2d at 133 ("As an employer, neither [the plan sponsor] nor its business decision to offer an early retirement program were subject to ERISA's fiduciary duties.").  Thus, Taylor's claim of fiduciary breach is properly limited in this case to the plan administrator, the Annuities and Benefits Committee.

Taylor suggested an early retirement incentive plan as a possible method to reduce his department's manpower. During the latter portion of 1988, Taylor, who started work at PNG in 1959, began to consider retirement, while he was aware that PNG was, consistent with his suggestion, considering an early retirement incentive program as a downsizing option.

During the first two months of 1989, Taylor spoke to Burgunder about whether PNG would adopt an early retirement incentive program and, if such a plan were enacted, whether it would be made retroactive to encompass employees retiring before the announcement of the program. While, as we have noted, Burgunder was not a member of the Annuities and Benefits Committee, the defendants concede that he was authorized "to advise employees of their rights and options under the Pension Plan." Appellees Br. at 21. Moreover, it was generally understood by PNG employees that Burgunder was the person with whom plan participants should speak regarding possible changes to the pension plan. Taylor represents that during one particular discussion, Burgunder told him that he believed that, should an early retirement program be offered, it might apply retroactively. More specifically, Taylor stated:

> During and prior to the March 1st date I had had discussions with Mr. Burgunder relative to rumors and possible studies that may have been going on that could lead to an early retirement program, and it was during one of those discussion points where I talked with Mr. Burgunder about other people that were retiring, and he gave me the -- he told me at that time that he believed that if there would be any early retirement programs offered in 1989, that they would make it

> retroactive to people retired from January 1st, until such time as they might offer the program.

App. at 8b-9b. Taylor continued:

> I can't recall exactly what his conversations were about the retroactivity other than he believed that if an early retirement program was announced or it was offered -- that might be a better word -- it might be retroactive to these people that we were talking about.

App. at 33b.

Following these conversations, on November 30, 1988, Taylor tendered a written announcement of his intention to retire:

> Please accept my request for permission to retire from active employment effective March 1, 1989. . . . I would also like to change my retirement date should a special retirement package be proposed or planned on or before 3-1-89.

App. at 34a. Taylor in fact retired on March 1, 1989. On August 10, roughly five months later, the Annuities and Benefits Committee announced that an early retirement program had been adopted by PNG's Board of Directors and would be available for employees retiring between September 1, 1989 and November 1, 1989. This program was not made retroactive to employees -- such as Taylor -- retiring prior to September 1, 1989.

Following this announcement, Taylor brought suit against the plan administrator contending that the statements made to him by Burgunder regarding the possible retroactive application of the early retirement program constituted a

misrepresentation by an ERISA plan fiduciary.  The parties consented to have this case adjudicated by a Magistrate Judge, 28 U.S.C.A. § 636(c) (1993), who concluded that the statements made by Burgunder to Taylor did not constitute a misrepresentation, and hence the defendants had not breached their fiduciary obligation.  He therefore granted the defendants' motion for summary judgment.

On this appeal of the Magistrate Judge's order, authorized by 28 U.S.C.A. § 636(c)(3) (1993), the defendants ask us to affirm on the ground that Burgunder was not acting on behalf of the plan administrator when speaking with Taylor about possible changes in the pension plan or, alternatively, on the basis of the Magistrate Judge's reasoning that there was no misrepresentation as a matter of law.  In reviewing an order granting summary judgment we exercise plenary review, applying the same standard that governed the district court.  That standard provides that summary judgment should be rendered if the evidence is such that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986).

II.

A.

The members of the Annuities and Benefits Committee, the plan administrator of PNG's pension plan, are fiduciaries, required to "discharge [their] duties with respect to [the] plan

solely in the interest of the participants and beneficiaries."[2] ERISA § 404(a)(1), 29 U.S.C.A. § 1104(a)(1) (1986). We addressed the scope of this fiduciary obligation under a similar set of circumstances in Fischer v. Philadelphia Electric Co., 994 F.2d at 130. There, employees of the Philadelphia Electric Company ("PECO") had approached PECO's benefits counselors and questioned them about whether any early retirement incentive plan was being considered. Although PECO was considering an early retirement incentive plan, the benefits counselors, acting pursuant to explicit instructions from PECO's senior management, informed the plan participants that they had no knowledge of any such plan. The plaintiffs, plan participants who retired before the announcement of the early retirement incentive pension plan, alleged that PECO had breached its fiduciary duties under ERISA by making affirmative material misrepresentations regarding PECO's pension plan. The action against PECO was grounded on its alleged violation of fiduciary obligations in its capacity as

---

[2] As noted above, the members of the Annuities and Benefits Committee are the relevant defendants in this action, and Taylor has alleged a fiduciary breach on the part of that Committee for statements made by Burgunder, PNG's Supervisor of Employee Benefits. It is therefore necessary to analyze accurately under appropriate legal doctrine Taylor's appeal of the magistrate judge's dismissal of this action. We acknowledge that Taylor has also alleged a fiduciary breach on the part of PNG, a claim upon which the magistrate judge chose to focus in his memorandum opinion and which this court has disposed of in note 1. The disposition of this claim does not, however, obviate the need to properly address Taylor's parallel claim of fiduciary breach on the part of the Annuities and Benefits Committee.

plan administrator.[3]  The district court granted summary judgment for PECO and the plaintiffs appealed.

The Fischer panel began its analysis by recognizing that well established case law provides that plan administrators have a fiduciary obligation not to affirmatively misrepresent material facts to plan participants.  Fischer, 994 F.2d at 135 (citing Eddy v. Colonial Life Ins. Co., 919 F.2d 747, 751 (D.C. Cir. 1990) ("This duty to communicate complete and correct material information about a beneficiary's status and options is not a novel idea."));  see also Bixler v. Central Penn. Teamsters Health-Welfare Program, 12 F.3d 1292, 1300 (3d Cir. 1993) (recognizing that plan administrators have "an obligation to convey complete and accurate information material to the beneficiary's circumstances").  The panel restated this obligation in the context of fiduciaries who counsel plan participants regarding the possible adoption of amendments to a plan:

> we hasten to add that ERISA does not impose a "duty of clairvoyance" on fiduciaries.  An ERISA fiduciary is under no obligation to offer precise predictions about future changes to its plan. Rather, its obligation is to answer participants' questions forthrightly, a duty that does not require the fiduciary to disclose its internal deliberations nor interfere with the substantive aspects of the collective bargaining process. A plan administrator may not make affirmative material misrepresentations to plan participants about changes to an employee pension benefits plan.

---

[3] See supra n.1.

> Put simply, when a plan administrator speaks, it must speak truthfully.

<u>Fischer</u>, 994 F.2d at 135 (internal quotation marks and citations omitted).

Given this obligation, PECO contended that the statements made by the benefits counselors were not affirmative misrepresentations, since company officials had not told them of the discussions taking place among senior management regarding the contemplated adoption of an early retirement incentive program. The <u>Fischer</u> panel rejected this argument and reversed the district court's grant of summary judgment, concluding that, given the facts alleged, the plan administrator was responsible for statements made by the benefits counselors, and that PECO, which was plan administrator as well as plan sponsor, had therefore breached its fiduciary obligation to not affirmatively misrepresent material information to plan participants:

> PECO argues that these communications cannot be characterized as "affirmative misrepresentations" because "when the benefits counselors . . . stated that they knew of no [early retirement] plan, their representations were correct." . . . This explanation will not do, for the fiduciary obligations owed to the plan participants were owed by PECo as plan administrator. These obligations cannot be circumvented by building a "Chinese wall" around those employees on whom plan participants reasonably rely for important information and guidance about retirement.

<u>Fischer</u>, 994 F.2d at 135 (emphasis omitted).

B.

While acknowledging that they had a fiduciary obligation as plan administrator not to materially misrepresent information regarding possible changes in PNG's pension plan, the present defendants contend that they have not violated this obligation since Burgunder was not a member of the Annuities and Benefits Committee and was not otherwise a fiduciary. The defendants attempt to distinguish this case from Fischer, where the misrepresentations were allegedly made by benefits counselors who were the employees of the plan administrator, PECO. In this action, the Annuities and Benefits Committee, and not PNG, is the named fiduciary, and hence, the defendants assert, they cannot be liable for any affirmative misrepresentations made to plan participants by Burgunder, PNG's employee, about possible changes to PNG's pension plan. While we agree that Burgunder was not a member of the Annuities and Benefit Committee, and otherwise not a fiduciary of the plan, we cannot agree with the defendants that Burgunder was not acting on their behalf when speaking with Taylor.

The defendants concede that Burgunder had actual authority, as Supervisor of Employee Benefits, to advise employees of their rights and options under the plan, prepare reports concerning participants' benefits, and calculate the costs of alternative plan amendments on behalf of the plan administrator. Appellees Br. at 21. Given that Burgunder's activities are limited to these administrative ministerial functions, we agree with the defendants that Burgunder is not a fiduciary. Department of Labor Regulation § 2509.75-8, 29 C.F.R.

§ 2509.75-8, Q & A D-2 provides that such individuals, whose activities are limited "within a framework of policies, interpretations, rules, practices, and procedures made by other persons, fiduciaries with respect to the plan," cannot be individually liable as fiduciaries under ERISA, since they fail to exercise "the discretionary authority or discretionary control" over the plan required for the direct imposition of fiduciary liability.  See ERISA § 3(21)(A), 29 U.S.C.A. § 1002(21)(A) (West Supp. 1993).

While Burgunder is not himself a fiduciary with respect to the plan (and he is not a defendant in this action), he did function, under the regulations, as a non-fiduciary agent of the defendants, assisting them in discharging their authority and responsibility, as plan administrator, to "control and manage the operation and administration of the plan."  ERISA § 402(a)(1), 29 U.S.C.A. § 1102(a)(1) (1986).  While Burgunder is formally the employee of plan sponsor PNG, he performed his activities for the plan on behalf of the plan administrator defendants, and not on behalf of the plan sponsor.  The conclusion that Burgunder performed these tasks on behalf of the plan administrator, the named fiduciary with respect to the plan, is clear from the regulations.  These provide that "[i]n discharging fiduciary responsibilities, a fiduciary with respect to a plan may rely on . . . persons who perform purely ministerial functions for such plan," such as "advising participants of their rights and options under the plan."  DOL Reg. § 2509.75-8, 29 C.F.R. § 2509.75-8, Q & A D-2 & FR-11 (emphasis added); see also 2 JEFFREY D. MAMORSKY,

EMPLOYEE BENEFITS LAW: ERISA AND BEYOND § 12.06[4] (1993) (recognizing that, pursuant to DOL Reg. § 2509.75-8, a committee, acting as plan administrator, can "select[] agents to perform ministerial functions").

The defendants concede, as we have noted, that Burgunder is governed by this regulation, and that he had actual authority as the Supervisor of Employee Benefits to "advise employees of their rights and options under the Pension Plan." Appellees Br. at 21. This authority originates from the defendants, the plan administrator, and not from the plan sponsor, for the plan administrator is the entity with the fiduciary obligation to "control and manage the operation and administration of the plan." ERISA § 402(a)(1), 29 U.S.C.A. § 1102(a)(1) (1986). In contrast, PNG, the plan sponsor, is not a fiduciary and correspondingly has no duty to administer the plan. Thus, under the applicable regulations, Burgunder was acting as a non-fiduciary agent of the defendants (the plan administrator) and not PNG (the plan sponsor) in "advising participants of their rights and options under the plan." Department of Labor Regulation § 2509.75-8, 29 C.F.R. § 2509.75-8, Q & A D-2.

This conclusion is consistent with our reasoning in Fischer, where we held that a plan administrator violates its "fiduciary obligations owed to the plan participants" when "those employees on whom plan participants reasonably rely for important information and guidance about retirement" make material misstatements regarding possible changes to a company's pension plan. Fischer, 994 F.2d at 135. The fact that the benefits

counselors who made the misrepresentation in Fischer were the employees of PECO does not distinguish that case from ours. The employees in Fischer were acting as the agents of PECO in its capacity as plan administrator, not as employer/plan sponsor. See id. at 133 ("As an employer, neither PECo nor its business decision to offer an early retirement program were subject to ERISA's fiduciary duties." (internal quotation marks omitted)). Like the benefits counselors in Fischer, Burgunder was acting to assist the plan administrator, not the plan sponsor, in discharging its fiduciary obligation to "control and manage the operation and administration of the plan." ERISA § 402(a)(1), 29 U.S.C.A. § 1102(a)(1) (1986).

## C.

Having concluded that Burgunder was acting on behalf of the defendants, and not PNG, in performing the functions outlined above, we must consider whether Burgunder was acting within the scope of his authority as an agent of the defendants in making representations to Taylor regarding the possible retroactive application of plan amendments under consideration by PNG, the plan sponsor. In making this determination, we are governed by the law of agency, as developed and interpreted as a matter of federal common law. See Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 99, 110, 109 S. Ct. 948, 954 (1989) ("[C]ourts are to develop a federal common law of rights and obligations under ERISA-regulated plans."); Franchise Tax Board v. Construction Laborers Vacation Trust, 463 U.S. 1, 25, 103 S. Ct. 2841, 2854, n.26 (1983) ("`[A] body of Federal substantive law will be

developed by the courts to deal with issues involving rights and obligations under private welfare and pension plans.'" (quoting remarks of Sen. Javits at 129 CONG. REC. 29942)); National Football Scouting, Inc. v. Continental Assurance Co., 931 F.2d 646, 648 (10th Cir. 1991) (examining whether "under the federal common law of agency" an agent of a plan fiduciary was acting within his actual or apparent authority).

In this regard, we recognize that implicit in our holding in Fischer is the assumption that in counseling the plan participants about possible amendments to the plan, the PECO benefits counselors were acting within their authority as agents of the plan administrator. In particular, we read our limitation of fiduciary liability to "those employees on whom plan participants reasonably rely for important information and guidance about retirement" as a legal conclusion that such individuals operate, at a minimum, within their apparent authority to provide such information and guidance to plan participants, on behalf of the plan administrator. The defendants here admit that Burgunder had actual authority to "advise[] employees of their rights and options under the Pension Plan." Appellees Br. at 21. Moreover, it is uncontested that plan participants reasonably relied on Burgunder for important information and guidance about retirement. Considering these facts in light of the entire record, we conclude that, like the benefits counselors in Fischer, Burgunder was acting within his authority as an agent of the plan administrator, the members of

the Annuities and Benefits Committee, in counseling plan participants regarding possible changes in the plan.

Our conclusion also accords with established principles of apparent authority. It is well settled that apparent authority (1) "results from a manifestation by a person that another is his agent" and (2) "exists only to the extent that it is reasonable for the third person dealing with the agent to believe that the agent is authorized." RESTATEMENT (SECOND) OF AGENCY § 8 cmts. a & c (1958). In our recent opinion in American Telephone & Telegraph v. Winback & Conserve Program, ___ F.3d ___, 1994 U.S. App. LEXIS 34398, 1994 WL 685911 (3d Cir. Dec. 9, 1994), applying the concept of apparent authority under the federal common law of agency, we held that "[a]pparent authority arises in those situations where the principal causes persons with whom the agent deals to reasonably believe that the agent has authority. . . ." Id. at *64, 1994 WL 685911 at *18 (internal quotation marks omitted).

It is uncontroverted that both elements necessary for the existence of apparent authority are present in this case. First, the defendants' undisputed vesting of Burgunder with the authority to "advise employees of their rights and options under the Pension Plan" clearly constitutes a manifestation that he was their agent.

Second, the plan participants, such as Taylor, reasonably believed that Burgunder specifically had the authority to counsel plan participants about possible amendments to the plan. Taylor actually believed that Burgunder had the authority

to counsel plan participants about possible changes in the plan. App. at 41b ("I accepted his comments because he's the key person in the retirement process at Peoples Natural Gas at the time I retired."). Moreover, this belief was reasonable in that the evidence demonstrates that plan participants generally considered Burgunder the person to speak with regarding possible changes in retirement benefits. In light of this reasonable belief about what information Burgunder was able to provide, the defendants' authorization of Burgunder to be their representative to plan participants, and the defendants' lack of effort to announce any limits to the scope of Burgunder's authority, it was a short and reasonable step for plan participants, such as Taylor, to believe that Burgunder not only was able, but indeed possessed the specific authority, to counsel them about possible amendments to the plan.

We conclude, therefore, that Burgunder was acting, at a minimum, with apparent authority as agent of the defendants in counseling Taylor regarding possible changes in the company's pension plan. Given this authority, the defendants will be liable for any affirmative material misrepresentations made by Burgunder concerning the possible retroactive application of the plan's early retirement incentive plan.

D.

We therefore are presented with the question whether Burgunder's alleged statement to Taylor that "he believed that if an early retirement program was . . . offered . . . it might be retroactive," app. at 33b (emphasis supplied), constituted a

material misrepresentation. We agree with the Magistrate Judge that, as a matter of law, no reasonable fact-finder could conclude that Burgunder's statement constituted a misrepresentation.[4]

It is uncontested that at the time of Burgunder's statement to Taylor, the questions whether PNG would enact an early retirement incentive plan, and whether it would apply retroactively, were both yet undecided by PNG. Given that the plan sponsor, PNG, had yet to make a final decision regarding the prospective amendment, we conclude that the defendants did not violate their fiduciary obligation by merely confirming to Taylor that the adoption of such an amendment was under consideration

---

[4] In addition to alleging that the defendants misrepresented material facts regarding the proposed amendment's retroactivity, Taylor contends that they breached an affirmative fiduciary duty to inform plan participants when possible amendments to an employee benefit plan are under serious consideration by the plan sponsor. While we recognize that in certain instances a fiduciary has an affirmative obligation to disclose relevant material information to plan participants "about which the beneficiary has not specifically inquired," Bixler, 12 F.3d at 1300, we do not believe that the facts of this case present this issue, and therefore we will not address it. During the time that Taylor made his decision regarding the effective date of his retirement, he was not ignorant of the fact that PNG was seriously considering an early retirement incentive plan. Indeed, Taylor suggested in his own efficiency report that an early retirement incentive plan be instituted as a way to reduce his department's manpower, and he was aware through his discussions with the upper management of PNG that such a plan was under consideration. Moreover, Taylor discussed with Burgunder, on multiple occasions, the likelihood of the company's enacting such an amendment to the plan, and he specifically reserved the right, in his letter of resignation, to change his retirement date from March 1, 1989 if such an amendment were enacted before that time.

and by expressing a reasonable opinion as to the scope of the possible amendment.  The record clearly reflects that Burgunder's prediction was by all accounts reasonable.  Burgunder based his prediction on two grounds: (1) an outside consultant had suggested a retroactive early retirement program; and (2) a member of PNG's board of directors, Mr. Flinn, to whom Burgunder had talked about the amendment's possible scope, had stated that he supported making the program retroactive.

Burgunder's alleged statement is a far cry from the statements made by the benefits counselors in Fischer that "there was definitely nothing in the planning," when in fact such an amendment was under serious consideration by company officials.  In contrast, Burgunder's attempt to counsel Taylor by offering his prediction based on his discussions with a member of PNG's board of directors was not a misrepresentation.

Taylor conceded that Burgunder's statement was nothing more than his "best guess as to what may occur should an early retirement package be adopted."  App. at 13a.  An honest statement of belief reasonably grounded in fact does not constitute a misrepresentation.  As Justice Holmes recognized in another context, "[t]he rule of law is hardly to be regretted, when it is considered how easily and insensibly word of hope or expectation are converted by an interested memory into statements of quality or value when the expectation has been disappointed." Deming v. Darling, 20 N.E. 107, 148 Mass. 504, 506 (1889).

III.

In sum, we conclude that although the defendants are responsible for any material misstatements made by Burgunder to Taylor regarding possible changes in PNG's pension plan, the statements allegedly made by Burgunder do not, as a matter of law, constitute a misrepresentation.  We will, therefore, affirm the order of the Magistrate Judge granting the defendants' request for summary judgment.

---

Thomas H. Taylor v. The Peoples Natural Gas Company
No. 94-3109

Cowen, Circuit Judge, concurring.

I join in Parts I and IID of the majority opinion and therefore concur as to the judgment in this case.  I am unable to join in Parts IIA-C, however, because I believe that the majority's opinion sweeps more broadly than is justified under the facts presented here.

At issue in this case is a statement made by John Burgunder, The Peoples National Gas Company's Supervisor of Employee Benefits, to Thomas Taylor, a former employee of The Peoples National Gas Company ("PNG"), concerning the retroactivity of a potential amendment to PNG's pension plan. According to Taylor, Burgunder misrepresented to him that if PNG offered an early retirement incentive plan, Taylor would get its benefits even if Burgunder retired before the incentive plan was enacted.  Specifically, Taylor alleged that:

> During and prior to the March 1st date, I had had discussions with Mr. Burgunder relative to rumors and possible studies that may have been going on that could

> lead to an early retirement program, and it was during
> one of those discussion points where I talked with Mr.
> Burgunder about other people that were retiring, and he
> gave me the -- he told me at that time that <u>he believed</u>
> that if there would be any early retirement programs
> offered in 1989, that they would make it retroactive to
> people retired from January 1st, until such time as
> they might offer the program.

App. at 8b-9b (emphasis added).  He continued:

> I can't recall exactly what his conversations were
> about the retroactivity other than <u>he believed</u> that if
> an early retirement program was announced or it was
> offered -- that might be a better word -- <u>it might</u> be
> retroactive to these people that we were talking about.

App. at 33b (emphasis added).

As the majority correctly recognizes, the magistrate judge
who adjudicated this case concluded that the statement made by
Burgunder to Taylor that <u>he believed</u> the early retirement program
would be retroactive did not constitute misrepresentation.
<u>Taylor v. Peoples Natural Gas Co.</u>, No. 92-394, slip op. at 4-5
(W.D. Pa. January 27, 1994).  Agreeing with the magistrate judge,
the majority holds in Part IID that as a matter of law, no
reasonable fact-finder could conclude that Burgunder's statement
constituted a misrepresentation.  Maj. Op. at ___ [typescript at
18].  Inexplicably, however, before disposing of this case on the
unassailable grounds aptly set out by the magistrate judge, the
majority chooses in Parts IIA-C to pose and answer its own
questions about the relationship between ERISA fiduciaries and
their agents in cases, unlike the case at hand, where a party

demonstrates a misrepresentation. The majority concludes that a plan administrator can be held liable for a breach of a fiduciary duty for misrepresentations by the plan administrator's non-fiduciary agents. Because the majority reaches out to decide an issue that is not squarely before us, I am unable to join in Parts IIA-C of the majority opinion.

It is well settled law that in general "[c]ases are to be decided on the narrowest legal grounds available, and relief is to be tailored carefully to the nature of the dispute before the court." United States v. Rias, 524 F.2d 118, 120 n.2 (5th Cir. 1975) (quoting Korioth v. Briscoe, 523 F.2d 1271, 1275 (5th Cir. 1975)); see also In re Chicago, Rock Island and Pac. R.R, 772 F.2d 299, 303 (7th Cir. 1985) (it is an "elementary maxim of our legal system" that a court should decide "only the case before it"), cert. denied, 475 U.S. 1047, 106 S. Ct. 1265; Shamloo v. Mississippi State Bd. of Trustees of Insts. of Higher Learning, 620 F.2d 516, 524 (5th Cir. 1980) (expressing concern that cases be decided on the narrowest legal grounds available); Finley v. Hampton, 473 F.2d 180, 189 (D.C. Cir. 1972) (explaining that courts do not decide hypothetical controversies). This proposition is a corollary to the rule that federal courts are not to render advisory opinions, but rather are to decide specific issues for parties with real disputes. See, e.g., Korioth, 523 F.2d at 1274-75; see also United States v. Leon, 468 U.S. 897, 963, 104 S. Ct. 3430, 3447 (1984) (Stevens, J.,

concurring) ("[W]hen the Court goes beyond what is necessary to decide the case before it, it can only encourage the perception that it is pursuing its own notions of wise social policy, rather than adhering to its judicial role.").

The statements the majority makes concerning the possible liability of ERISA fiduciaries due to misrepresentations of their non-fiduciary agents run afoul of this rule because the majority's holding that there was no misrepresentation here is sufficient to put this case to rest. Moreover, the majority's choice to explore agency law is particularly ill-advised because (1) we have not had the benefit of the magistrate judge's thinking and findings on these important matters, (2) these issues were neither argued nor briefed by counsel, and (3) the majority breaks considerable new ground in the area of ERISA fiduciary liability.

The majority's opinion states that the Annuities and Benefits Committee of the System Pension Plan, the plan administrator and co-defendant in this matter, can be held liable for statements by Burgunder because Burgunder was acting within the scope of his apparent authority as an agent of the plan administrator in making representations to Taylor. The opinion of the magistrate judge disposing of this case, however, is completely devoid of any references to the question of whether an ERISA fiduciary can be held liable for statements of its non-fiduciary agents acting within the scope of their apparent

authority. Indeed, in his opinion, the magistrate judge reaches only two conclusions of law. First, he concludes that there is no general duty on the part of an employer to inform its employees of any action it is considering taking in the future. As he states, "[t]he fact that PNG was <u>considering</u> an early retirement package for 1989 is not information which ERISA requires an employer to disclose." <u>Taylor</u>, slip op. at 3 (emphasis added). Second, he concludes that since "[p]laintiff concedes that he was not informed that a decision had been made to offer any early retirement program at all, and that this was simply Mr. Burgunder's best guess as to what may occur should an early retirement program be adopted," there was "no misrepresentation, and thus no breach of fiduciary duty." <u>Id.</u> at 4-5. There is absolutely no discussion of the position now advanced by the majority that the plan administrator could be held liable for statements of the plan administrator's non-fiduciary agents.[5]

---

[5]Accordingly, footnote one of the majority opinion is slightly misleading when it first states that "[t]he Magistrate Judge granted PNG's motion for summary judgment on this claim concluding that, under the circumstances, PNG was not subject, in its capacity as plan sponsor, to ERISA's fiduciary obligations" and then draws the conclusion that "Taylor's claim of fiduciary breach is properly limited in this case to the plan administrator." Maj. Op. at ___ [typescript at 4]. While it is certainly accurate to explain that PNG, the plan sponsor, is not a fiduciary, the majority's footnote makes it appear as if the magistrate judge drew the distinction between the duty of an employer as a plan sponsor and the fiduciary duty of the Annuities and Benefits Committee as a plan administrator. Indeed, the magistrate judge did not even distinguish between the

Even more importantly, the magistrate judge's factual recitation and the record before us are insufficient to establish the precise nature of the relationship between the System Pension plan administrator and Burgunder, a failing that makes it extremely difficult to perform a careful analysis of the possible applicability of the apparent authority doctrine. PNG asserts that Burgunder was merely an employee of PNG and was not a member of the "separate and distinct plan administrator." Appellee's Brief at 21. The magistrate judge's factual recitation does not even touch on the relationship between Burgunder and the plan administrator. As the majority recognizes, "apparent authority arises in those situations where the principal causes persons with whom the agent deals to reasonably believe that the agent has authority." Maj. Op. at ___ [typescript at 16] (citing American Telephone & Telegraph v. Winback & Conserve Program, No. 94-5305, 1994 U.S. App. Lexis 34398, at *64, 1994 WL 685911, at *18 (3d Cir. Dec. 9, 1994)). The majority, however, fails to adduce a single fact which convincingly demonstrates that the plan administrator caused employees of PNG to conclude that Burgunder was authorized to make representations to employees concerning potential plan amendments.[6] Accordingly, I am

_____

plan sponsor and the plan administrator in the discussion section of his opinion.

[6]The majority states that Taylor's belief was reasonable because "evidence demonstrates that plan participants generally considered Burgunder the person to speak with regarding possible changes in retirement benefits." Maj. Op. at ___ [typescript at

troubled by the majority's analysis and concerned with the logic of deciding a question without relevant facts.

Equally disturbing in this case is the majority's willingness to advance arguments that were not put forward by the appellant in the first instance and that were not briefed by the parties. We have repeatedly recognized the impropriety of reaching issues that are not properly briefed before us. United States v. Martinez-Hidalgo, 993 F.2d 1052, 1057 n.10 (3d Cir. 1993), cert. denied, ___ U.S. ___, 114 S. Ct. 699 (1994); Francesconi v. Kardon Chevrolet, Inc., 888 F.2d 18, 19 n.1 (3d Cir. 1989); H. Prang Trucking Co. v. Local Union No. 469, 613 F.2d 1235, 1239 (3d Cir. 1980); see also United States v.

---

17] (emphasis added). In support of this proposition the majority cites a portion of the deposition testimony of Taylor, App. at 22a, and a portion of the deposition testimony of Burgunder, App. at 39a-40a. In the portion of Taylor's testimony that the majority cites, Taylor simply recounts his feeling that most people "felt comfortable" dealing with Burgunder concerning their retirement. Taylor never makes the claim that others felt comfortable relying on Burgunder's statements about potential plan amendments. Further, in the portion of Burgunder's testimony that the majority cites, Burgunder merely testifies that he had discussed "rumors" of a new retirement program with employees.

As a preliminary matter, it is difficult to understand how a discussion of "rumors" could give rise to a reasonable belief that Burgunder could authoritatively speak to the issue of plan amendments. Even more importantly, it is hard to comprehend how the majority can rely on statements by Burgunder, the alleged agent, to conclude that the principal (i.e., the plan administrator), made a representation to the employees that Burgunder could speak authoritatively about possible amendments. What the majority lacks is a statement by the plan administrator, the principal, disclosing that Burgunder could give advice concerning potential plan amendments.

Crawley, 837 F.2d 291, 293 (7th Cir. 1988) (expressing concern over decisions based on issues not refined by the fires of adversary presentation).  In his opening brief, Taylor simply argued that a fiduciary may not materially mislead a plan participant.  Appellant's Brief at 11.[7]  Moreover, in his reply brief, Taylor makes it clear that his argument is that PNG is a fiduciary and it owed the fiduciary duty of conveying complete and accurate information to him.  Appellant's Reply Brief at 2.  Taylor states, "PNG continues to assert its status as employer only, to which the Appellant disagrees. [sic]."  Id. at 1.  Since the majority apparently agrees that PNG is not a fiduciary, see Maj. Op. at ___ n.1 [typescript at 4 n.1], it is difficult to see how Taylor's arguments make it necessary to discuss the plan administrator's possible liability due to statements by non-fiduciary agents.  Taylor never specifically pressed on appeal the claim that because the plan administrator is a fiduciary, it should be liable for statements of its non-fiduciary agents.  Accordingly, counsel for PNG and the Annuities and Benefits Committee had no occasion to evaluate this issue in their

---

[7]Taylor also argued that (1) an employer has an affirmative duty to inform its employees of any action it is considering taking in the future, and (2) that there are insufficient facts in this record to resolve certain disputed issues.  The first argument is disposed of by the majority opinion at footnote three.  The second argument becomes irrelevant once we conclude that there was no misrepresentation.

briefs.[8]  Without proper argument and discussion of this issue,
it is ill-advised to reach such claims.

Finally, the majority's decision to reach the issue of
a plan administrator's liability for non-fiduciary agents is ill-
advised because the majority's conclusion is not firmly dictated
by our previous precedents.  The majority states that the
conclusion it reaches is consistent with our reasoning in Fischer
v. Philadelphia Electric Co., 994 F.2d 130 (3d Cir.), cert.
denied, ___ U.S. ___, 114 S. Ct. 622 (1993).  In Fischer,
however, we merely held that "[a] plan administrator may not make
affirmative material misrepresentations to plan participants
about changes to an employee pension benefits plan."  Fischer,
994 F.2d at 135.  We did not comment on the possible liability of
a plan administrator for statements by its non-fiduciary agents.
While the majority's position may be a logical extension of
Fischer, I would have left our decision as to whether such an
extension is justified to another day when the issue is more
squarely presented.  Accordingly, relying simply on the fact that
Taylor failed to demonstrate misrepresentation in this case, I
would affirm the decision of the magistrate.

---

[8]PNG does argue, by way of an alternative grounds to affirm
the magistrate's decision, that PNG is not a fiduciary and that
Burgunder is not a fiduciary.  It does not, however, reach the
question of whether Burgunder could bind the plan administrator
as a non-fiduciary agent.