Stanley A. RODOWICZ, et al.,
Plaintiffs, Appellants,

v.

MASSACHUSETTS MUTUAL LIFE INSURANCE COMPANY, et al.,
Defendants, Appellees.

Stanley A. Rodowicz, et al.,
Plaintiffs, Appellees,

v.

Massachusetts Mutual Life Insurance Company, et al., Defendants, Appellants.

Nos. 98–1654, 98–1690.

United States Court of Appeals,
First Circuit.

Heard Feb. 5, 1999.

Decided Sept. 15, 1999.

As Amended on Denial of Rehearing
En Banc Nov. 3, 1999.*

* Judge Bailey Aldrich did not participate in this vote.

John C. Sikorski with whom Keith A. Minoff and Robinson, Donovan, Madden & Barry, P.C. were on brief for plaintiffs.

David G. Cohen with whom Charles S. Cohen and Egan, Flanagan and Cohen, P.C. were on brief for defendants.

Before BOUDIN, Circuit Judge, ALDRICH and CAMPBELL, Senior Circuit Judges.

CAMPBELL, Senior Circuit Judge.

Plaintiffs each retired from defendant Massachusetts Mutual Life Insurance Company ("MassMutual" or "the Company") under terms that were less favorable than those in a special offer made to employees soon after. They filed suit against MassMutual and the Massachusetts Mutual Voluntary Termination Program ("VTP")[1], alleging that by failing to reveal that a more favorable retirement option was forthcoming, MassMutual violated its fiduciary duties under the Employee Retirement Income Security Act of 1974 ("ERISA") (codified at 29 U.S.C. §§ 1001 et seq.). Plaintiffs also alleged misrepresentation under Massachusetts common law. The district court dismissed plaintiffs' ERISA claims on the ground that the severance package offered by the Company did not constitute a "plan" for purposes of ERISA.[2] Exercising supplemental jurisdiction, the court also granted summary judgment dismissing the state law misrepresentation claims as well as later-added estoppel claims. Plaintiffs appeal from the grant of summary judgment on their state law claims. MassMutual cross-appeals from the district court's ruling that the severance package is not a "plan" governed by ERISA. The Company contends that should the case be remanded to the district court, only plaintiffs' ERISA claims will survive.

For the reasons that follow, we *affirm* the district court's dismissal of plaintiffs' ERISA claims. We also *affirm*, although on grounds somewhat different from those stated by the district court, the dismissal of most of plaintiffs' state law claims, but *reverse and remand* for trial the claims of three of the eight plaintiffs.

## I. *FACTS*

This case has followed a torturous path. The underlying facts and procedural history are set forth in two opinions below. *See Rodowicz v. Massachusetts Mutual Life Ins. Co.*, 857 F.Supp. 992 (D.Mass.1994); *Rodowicz v. Massachusetts Mutual Life Ins. Co.*, 3 F.Supp.2d 1481 (D.Mass.1998). We summarize the facts pertinent to the issues raised in the parties' appeals.

In 1990, MassMutual began to be concerned that senior executives were not leaving the company in sufficient numbers to make room for the promotion of other executives. To address this problem, employees drafted a 1990 Voluntary Incentive Program ("VIP"), which was intended to induce more senior executives to retire. The VIP was never adopted. However, the VIP documents were saved by the Company for possible use at a later date.

During the summer of 1991, for the first time in MassMutual's history, two ratings agencies lowered their ratings of MassMutual products. The agencies were especially concerned that MassMutual was over-invested in real estate, creating the danger that losses in that sector could impact negatively upon the Company's value. The agencies' downrating occurred at a time when both the national economy and the insurance industry were experiencing economic troubles.

MassMutual thereupon began to consider what measures it could take to lower costs. As employee salaries comprised the largest single category of cost, at the end of 1991 senior executives at MassMutual looked into reducing staffing levels. After consideration, however, the Company decided against workforce reduction at the time.

In February 1992, Thomas Wheeler, MassMutual's Chief Executive Officer, delivered an annual "state of the company" speech to all employees. The February

---

1. Under ERISA, "benefit plans" have the right to sue and be sued. As we conclude in Part II, *infra*, that the VTP was not a "benefit plan," the VTP is not a proper defendant in this action.

2. ERISA applies to "any plan, fund or program" established or maintained by an employer that provides certain benefits to employees. 29 U.S.C. § 1002(2)(A).

14, 1992 issue of the company newsletter, the *MassMutual News,* summarized Wheeler's remarks.[3] Wheeler stated, in essence, that MassMutual was in good financial condition. He stated that while the ratings downgrade had "hurt our pride," there "would be no change in how we do business." Wheeler went on to state: "We are a company with integrity. We handle our business ethically and are better than our competitors." During the speech, Wheeler made no reference to any reduction in the Company's workforce.

In March 1992, John Pajak, MassMutual's Chief Operating Officer, assigned to senior members of his management team the task of determining the costs and savings from a workforce reduction. In connection with this assignment, Susan Alfano, Senior Vice President in Charge of Human Resources, gathered data from the Company's outside employee benefits consultant. Between March and September, 1992, Alfano thoroughly analyzed the costs and benefits of a reduction in force.

On September 17, 1992, Wheeler, Pajak, and other senior MassMutual executives met for the purpose of reviewing the Company's five-year budget. During the meeting, Wheeler and Pajak discussed MassMutual's wages and salaries paid, which, as said, were the Company's largest operating expense. Wheeler asked Pajak to develop some options for reducing this expense. Specifically, Wheeler instructed Pajak to "dust off" the VIP that had been developed in 1991.

On September 30, 1992, Pajak and Alfano made a presentation to the President's Cabinet, a formal MassMutual governing body that consisted of senior executives who reported directly to Wheeler. Pajak and Alfano recommended that the Company consider the possibility of a two-step reduction in force, in which a voluntary termination program ("VTP") would be followed by involuntary layoffs, to be completed by early 1993. Immediately following this presentation, Pajak and Alfano

were instructed to develop the details of such a program for further consideration.

In early October, 1992, senior MassMutual employees began developing the specifics of a workforce reduction program. By October 12, 1992, the terms of the VTP were drafted, and the Compensation Committee of MassMutual's Board of Directors for the first time authorized Wheeler to adopt the plan at his discretion. On October 19, 1992, Wheeler decided to adopt the VTP. The Company announced the adoption of the plan on October 23, 1992. The terms of the VTP were not finally settled and the plan documents were not signed until mid-November, 1992.

The VTP was open to most full-time MassMutual employees, about 4,000 in number. The plan provided for a one-time, lump sum severance bonus equal to: (1) three weeks of salary for every year of service, up to a maximum of 78 weeks, or (2) one week of salary for each full $5,000 of compensation, and a proportionate amount for an increment less than $5,000, up to a maximum of 52 weeks. The Company set December 1, 1992 as the deadline for eligible employees to elect to participate in the VTP. At its discretion, however, the Company could defer an employee's election date beyond the December 1 deadline, but in no case past June 30, 1993. The VTP included a mechanism whereby employees to whom the Company denied benefits could appeal from the denial.

Only employees who retired on or after October 23, 1992 and before January 2, 1993 were eligible to receive benefits under the VTP. Each of the named plaintiffs retired from MassMutual between August 1, 1992 and October 1, 1992. All of the plaintiffs would have received substantially higher retirement benefits if they had waited to retire until after October 23, 1992.

Plaintiffs each claim to have decided to retire after being lulled by misrepresenta-

---

3. There is no verbatim transcript of Wheeler's "state of the company" speech.

tions made by Company personnel to the effect that no change in retirement benefits was planned. The specific allegations are set forth below.

Plaintiff Stanley Rodowicz claims that in late August or early September 1992, Laura Cowles, an employee in Corporate Human Resources, told him that the Board of Directors had decided that there would be no change in the retirement package. Plaintiff Barbara Binsky alleges that in or around May 1992, she asked Byron Mattson, a Second Vice President, whether there was going to be any golden parachute or early retirement incentive. He answered "absolutely not, there will be no golden handshake." Later, Binsky asked a similar question of Priscilla Dill, a retirement counselor, who replied: "I really don't think there will be anything."

Plaintiff Anne Buck alleges that in July 1992, she was told by Dill that "I am not aware of anything coming down the road," or, as far as Dill knew at that point in time there was nothing going on with retirement packages. Sometime before May 1992, Michael Walker, Buck's former boss, allegedly told her that "anything can happen, but we have no definite plans [to adopt any enhanced benefits]."

Plaintiff Patricia Kennedy claims that in the spring of 1992, she was present when her boss, Linda Egan, told people at a department meeting that there would not be any severance program or early retirement incentive program. Plaintiff James Lemon claims that in the summer of 1992, he attended a retirement meeting at which Jack Wilson, a supervisor in Human Resources, announced that there would be no enhanced benefit package. Also, in 1985, Kenneth Cardwell, a MassMutual employee without any responsibility for employee benefits, had told Lemon that a severance payment offered to employees in other divisions would not be offered to his division.

Plaintiff Margaret Stevens alleges that in April 1992, she was told by Pat Ogoley, a retirement counselor, that she [Ms. Ogoley] did not know whether there would be any early retirement incentives. At some other time, another retirement counselor, Lois DeGray, indicated in response to an inquiry from Stevens that there would not be any enhanced benefit package or "golden handshake."

Plaintiff Sigmund Ziemba claims that in the spring of 1992, he happened to see Robert Pouliot, a senior officer at the company, in a hallway. Pouliot asked Ziemba how he was, and Ziemba responded that he was considering retirement but was concerned, as he understood that there might be a "package." Pouliot responded that he did not know, but that that was not what he had heard.

Plaintiff Raymond Faniel assumed that, as a forty-five year employee, MassMutual would keep him abreast of any pending changes in employee benefits. In March 1992, Faniel spoke with Priscilla Dill who, in response to Faniel's statement that it "doesn't look like there [will] be any changes," stated "I don't know, I don't think so, I haven't heard anything."

In addition to these specific statements, each of the plaintiffs asserted that they were misled by Wheeler's statements, quoted in the February 14, 1992 *MassMutual News,* to the effect that the Company was in good financial condition and there would be "no change" in the Company's course.

## II. *PROCEDURAL HISTORY*

Plaintiffs brought suit in federal court, invoking ERISA and the district court's federal question jurisdiction. The plaintiffs' original complaint contained two counts under ERISA for breach of fiduciary duty and improper administration of an employee benefit plan, as well as one count under Massachusetts common law alleging negligent and/or intentional misrepresentation. In an opinion issued on July 27, 1994, the district court denied, in part, defendants' motion to dismiss with regard to the two ERISA counts but allowed the motion with regard to the misrepresenta-

tion claims on the ground that plaintiffs' common law misrepresentation claims were preempted by ERISA. *See Rodowicz*, 857 F.Supp. at 999.

In 1995 this court, in *Belanger v. Wyman–Gordon Co.*, 71 F.3d 451, clarified the circumstances under which benefits given to employees would constitute a "plan" for purposes of ERISA. The district court ordered the parties to submit memoranda regarding the applicability of *Belanger*, and, thereafter, concluded that the Mass-Mutual VTP did not, in fact, constitute an employee benefit "plan" within the meaning of ERISA. *See Rodowicz v. Massachusetts Mutual Life Ins. Co.*, 915 F.Supp. 486, 489–90 (D.Mass.1996). Hence the district court, *sua sponte*, dismissed plaintiffs' ERISA-based claims.[4]

The district court was then faced with a rather unusual situation. The effect of the court's ruling that the VTP was not a "plan" subject to ERISA was to leave plaintiffs with no viable claims to pursue, as the court had previously dismissed all of plaintiffs' state law claims on the basis of ERISA preemption. As it seemed unfair to deprive plaintiffs of an opportunity to pursue their common law claims "merely as an outcome of the rapidly-evolving nature of ERISA law," the district court reconsidered and vacated its July 27, 1994 ruling and reinstated plaintiffs' common law misrepresentation claims. *Id.* at 491. The district court also allowed plaintiffs to amend their complaint to assert additional common law claims for violation of the covenant of good faith and fair dealing, and both promissory and equitable estoppel. The court retained jurisdiction over

the common law claims "as a matter of discretion." *Id.*[5]

In an opinion issued on April 24, 1998, the district court granted defendants' motion for summary judgment as to all of plaintiffs' common law claims. *See Rodowicz*, 3 F.Supp.2d at 1489. The court based its decision primarily upon *Vartanian v. Monsanto Company*, 131 F.3d 264 (1st Cir.1997), in which we held that an employer has a fiduciary duty under ERISA to disclose changes in retirement benefits at the point when "serious consideration" of the change in benefits occurs. *See id.* at 268. The district court concluded that summary judgment was warranted as to all of plaintiffs' claims because plaintiffs could not demonstrate that the VTP was under "serious consideration" by MassMutual until at least September 1992, by which time six of the eight plaintiffs had already retired, and after which neither of the two remaining plaintiffs made any inquiry regarding possible changes in retirement benefits.

## III. DISCUSSION

On appeal, plaintiffs assert that the district court erred in granting summary judgment in favor of defendants on the state common law claims. In its cross-appeal, MassMutual asserts that the district court erred in concluding that the VTP was not a "plan" governed by ERISA. The Company argues that in the event we determine that reversal of the district court's grant of summary judgment is warranted in any respect, plaintiffs should be permitted to proceed, if at all,

---

4. Defendants, who asserted that ERISA's strictures governed the VTP, filed a Motion for Reconsideration, for Interlocutory Appeal and for Entry of Separate Judgment. The district court denied the motion.

5. Neither party asserts on appeal that the district court abused its discretion in retaining jurisdiction over the state law claims. Given the nature of the proceedings, particularly the length of time that had already elapsed since the filing of the original complaint and the completeness of the summary judgment record, the district court acted well within its discretion in going forward with these claims. *See Roche v. John Hancock Mut. Life Ins. Co.*, 81 F.3d 249, 256–57 (1st Cir.1996) (district court in federal question case has discretion to decide state law claims even though federal claim is dismissed, and in exercising discretion should take into account "concerns of comity, judicial economy, convenience, fairness, and the like").

only with regard to their ERISA-based claims. We will first address the issue raised by MassMutual's cross-appeal.

## A. *Dismissal of the ERISA Claims*

■■■ The district court dismissed plaintiffs' ERISA-based claims on the ground that the MassMutual VTP was not an "employee benefit plan" governed by ERISA. After briefing on the subject, the district court ruled sua sponte that the VTP was not an ERISA plan, considering a record that included the plan document, the affidavit of Susan Alfano, and other relevant documents. The court thus treated the issue essentially as one for summary disposition, and we review its ruling as we would a judgment arising under Fed. R. Civ. P. 56. *Cf.* Fed. R. Civ. P. 12(b) (where parties present and court accepts matters outside pleadings, motion treated as one for summary judgment). The usual review standard in such circumstances is de novo. *See Reich v. John Alden Life Ins. Co.*, 126 F.3d 1, 6 (1st Cir.1997) (on summary judgment, in special circumstances analogous to a case stated, the ultimate application of law to facts in a Fair Labor Standards case was held subject to plenary review, although findings of certain subsidiary factual inferences were subject to review for clear error); compare *Belanger v. Wyman–Gordon Co.*, 71 F.3d 451, 453 (1st Cir.1995) (clearly erroneous review applied to district court's determination of ERISA plan status following a bench trial "as long as the trial court accurately applies the relevant legal standards"). In the present summary judgment situation, we are satisfied that we should review de novo whether or not the challenged retirement plan was so simple as to fall outside of ERISA.

■■■ "The beacon by which we must steer" to determine whether the MassMutual VTP is a covered ERISA "plan" is the Supreme Court's opinion in *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987). *Id.*, 71 F.3d at 454. In *Fort Halifax*, the Court stated that an employee benefit package is such a "plan" only if its "provision by nature requires an ongoing administrative program to meet the employer's obligation." *Id.* at 11, 107 S.Ct. 2211. *See also District of Columbia v. Greater Wash. Bd. of Trade*, 506 U.S. 125, 130 n. 2, 113 S.Ct. 580, 121 L.Ed.2d 513 (1992) (plan requires "some minimal, ongoing 'administrative' scheme or practice"). In *Fort Halifax*, the Court found that a Maine statute requiring employers to tender a one-time severance payment to displaced employees was not a "plan" because it called for no more than a "one-time, lump-sum payment triggered by a single event." *Id.* at 12, 107 S.Ct. 2211. ERISA did not apply because the Maine statute created no "need for an ongoing administrative program for processing claims and paying benefits." *Id.*

In *Fort Halifax*, the Supreme Court emphasized that Congress had enacted ERISA in order to (1) protect employees from a "patchwork scheme" of employee benefit regulations, and (2) safeguard the financial integrity of employee benefit funds over the long term. *See id.* at 12, 15–16, 107 S.Ct. 2211. Neither concern is implicated by a one-time payment triggered by a single event. By contrast, ongoing investments and obligations may give rise to a "patchwork scheme" of benefit regulations that are vulnerable to employer abuse, and thus implicate the purposes of ERISA. *See id.* at 16, 107 S.Ct. 2211.

Following *Fort Halifax*, this court has stated that "the existence of a plan turns on the nature and extent of an employer's benefit obligations." *Belanger*, 71 F.3d at 454. *See also Wickman v. Northwestern Nat'l Ins. Co.*, 908 F.2d 1077, 1083 (1st Cir.) (the "crucial factor in determining if a 'plan' has been established is whether the [proffering of an employee benefit] constituted an expressed intention by the employer to provide benefits on a regular and long term basis"), *cert. denied*, 498 U.S. 1013, 111 S.Ct. 581, 112 L.Ed.2d 586 (1990). "[S]o long as a proffered benefit

does not involve employer obligations materially beyond those reflected in *Fort Halifax* ... the benefit will not amount to a plan under the ERISA statute." *Belanger*, 71 F.3d at 455.

In *Belanger*, we held that a series of early retirement offers by which the defendant employer committed to give each eligible employee a one-time, lump-sum severance bonus equal to a week's salary for each year of employment with the company did not constitute a "plan" for purposes of ERISA. We stated that these offers were "precisely the kind of one-time, lump-sum payment that the *Fort Halifax* Court clearly excluded from the pantheon of ERISA plans." *Id.* at 455. By contrast, in *Simas v. Quaker Fabric Corp.*, 6 F.3d 849 (1st Cir.1993), we had held that the Massachusetts "tin parachute" statute, which authorized severance pay for employees who lost their jobs within twenty-four months following a corporate takeover, required an ongoing administrative scheme and was therefore a "plan" for purposes of ERISA. The "tin parachute" statute was triggered separately for each employee by the employee's individual termination within one of several alternative time periods. The statute also required the plan administrator to determine whether each employee was eligible for unemployment compensation under Massachusetts law. We described this as "effectively a cross-reference to other requirements," most importantly that the employee not have been discharged "for cause" within the meaning of state law. *See id.* at 853. We thought that individualized determinations, which would have taken place over the course of at least two years after the takeover, required "ongoing administrative obligations ... of a kind and over a time period, that go far enough beyond *Fort Halifax* to call the regime a 'plan' within the meaning of ERISA." *Id.*

Applying these precedents, the district court concluded, and we agree, that the MassMutual VTP "bears a striking resemblance to the individual severance packages in *Belanger*." *Rodowicz*, 915 F.Supp. at 489. The district court reasoned that the one-time bonus offered for the two-month period in the VTP, like the offers made in *Belanger*, was available to virtually all full-time MassMutual employees, required little in the way of administrative burden or expense, and did not require that the Company make a long-term financial commitment to any employee who chose to participate in the VTP. *See id.* The district court recognized that the VTP expressly excluded employees who had been "involuntarily terminated," calling for a determination that might be likened to the "for cause" decision in *Simas*. But based upon its interpretation of the VTP documents, the district court thought that the type of individualized determination required in *Simas* would not be required under the VTP, as the administrator of the VTP was authorized in his discretion to exclude all employees who had been terminated "for any reason or no reason at all." *See id.* at 490. No careful assessment of "cause" would be required.[6] Further, unlike the plan in *Simas*, the district court reasoned that the VTP did not require the administrator to make exclusion determinations over an extended period of time. *See id.* Finally, the district court concluded that the Company's decision to defer the election dates of some employees up to June 30, 1993 imposed no ongoing administrative burdens or financial obligations on the Company, but rather merely deferred the writing of a check until that time. *See id.*

■ We agree with the district court's determination that, on its particular facts, the MassMutual VTP did not constitute an ERISA "plan." *See Belanger*, 71 F.3d at 453. True, the VTP authorized certain

---

6. Indeed, requiring a "for-cause" determination would not, by itself, necessarily transform a severance program into an ERISA plan. *See Delaye v. Agripac*, 39 F.3d 235, 237

(9th Cir.1994); *Rodowicz*, 915 F.Supp. at 490 n. 1 (district court reviewed severance plan at issue in *Belanger*, noting that plan contained "for-cause" exclusion).

exclusions and deferrals, as well as appeals by disappointed employees, making it somewhat less mechanical and unthinking than the Maine statutory scheme in *Fort Halifax* and the one-time payment schemes in *Belanger*. Yet, as the district court found, the VTP did not call for the sort of ongoing, individualized determinations necessitated by the "tin parachute" statute addressed in *Simas*. *See Simas*, 6 F.3d at 853. *See also Velarde v. PACE Membership Warehouse, Inc.*, 105 F.3d 1313, 1316 (9th Cir.1997) ("minimal quantum of discretion" involved in for-cause determination was not sufficient to turn a severance agreement into an ERISA plan); *James v. Fleet/Norstar Fin'l Group, Inc.*, 992 F.2d 463, 468 (2d Cir.1993) (requiring individual determinations regarding eligibility, termination dates and payment amount did not create an ERISA plan). Nor did the VTP cross-reference other state law requirements, as did the statute in *Simas*. *See Simas*, 6 F.3d at 853.

■ The question under *Fort Halifax*, as we acknowledged in *Simas*, is a matter of degree. *See Id.* "[S]o long as *Fort Halifax* prescribes a definition based on the extent and complexity of administrative obligations, line drawing of this kind is necessary and close cases will approach the line from both sides." *Id.* at 854. The conclusion that the VTP did not go significantly beyond the employer obligations in *Fort Halifax* seems to us a reasonable one. *See Fort Halifax*, 482 U.S. at 12, 107 S.Ct. 2211 (no plan for purposes of ERISA in absence of "periodic demands on [employer] assets that create need for financial coordination and control"). We, therefore, hold that plaintiffs' ERISA-based claims were properly dismissed by the district court on summary judgment.

## B. The State Law Claims

After the district court dismissed plaintiffs' ERISA-based claims, it retained jurisdiction over plaintiffs' state common law claims and dismissed all of them on summary judgment. We review *de novo* the district court's grant of summary judgment. *See Associated Fisheries of Maine, Inc. v. Daley*, 127 F.3d 104, 108–09 (1st Cir.1997). Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). While we draw all inferences in the light most favorable to the non-moving party, here the plaintiffs, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

■ The district court advanced alternative reasons for entering summary judgment in favor of MassMutual with regard to plaintiffs' common law claims. Under Massachusetts law, a plaintiff in a misrepresentation action must prove a false statement of material fact made to induce the plaintiff to act, together with reasonable reliance on the false statement to the plaintiff's detriment. *See Zimmerman v. Kent*, 31 Mass.App.Ct. 72, 77, 575 N.E.2d 70 (1991). The district court concluded without explanation that "[t]he undisputed facts confirm that no employee of the defendant, knowingly or unknowingly, conveyed a false statement of any kind, let alone one of material fact, to the plaintiffs to induce them to act." *Rodowicz*, 3 F.Supp.2d at 1487. The court also stated, again without elaboration, that it was "a stretch" to characterize any of the statements made to plaintiffs as representations of fact at all. *See id.* at 1488.

The district court did not ultimately rest its grant of summary judgment on principles of Massachusetts tort law, however. "More importantly," the district court continued, "absolutely no evidence supports plaintiff's position that a specific proposed benefits package was in fact under 'serious

consideration' before the middle or end of September 1992 at the absolute earliest." *Id.* at 1488. The district court borrowed its "serious consideration" criterion from *Vartanian v. Monsanto Co.,* 131 F.3d 264 (1st Cir.1997). There we held that an employer *breaches its fiduciary duty under ERISA* when it misrepresents to its employees that no change in benefits is forthcoming when, in fact, the employer has such a change under "serious consideration." *See id.* at 272. We held that "serious consideration" of a change in plan benefits exists when: "(1) a specific proposal which would affect a person in the position of plaintiff (2) is being discussed for purposes of implementation (3) by senior management with the authority to implement that change." *Id.* The district court concluded that these three factors did not coalesce here until, at the earliest, September 30, 1992, when Pajak and Alfano made their presentation to the President's Cabinet. As all but two of the plaintiffs had retired prior to that time, and as the two remaining employees made no inquiries regarding an enhanced retirement package after September 17, 1992, the district court concluded that none of the plaintiffs had a viable misrepresentation claim.

■ Plaintiffs assail the district court's conclusion that "although technically advanced under theories of [Massachusetts] common law," their state law claims are "controlled by the body of decisions governing lawsuits under [ERISA]." *Rodowicz,* 3 F.Supp.2d at 1486. They argue on appeal, as they did below, that the district court should have applied Massachusetts common law to each of their claims. Plaintiffs assert that an application of Massachusetts common law principles would lead to the conclusion that there are triable issues of fact that preclude summary judgment as to each of their claims. We agree with plaintiffs that Massachusetts common law provides the relevant yardstick. Using that yardstick, we believe it was error to grant summary judgment

against three of the plaintiffs, although we affirm as to the others.

■ The "serious consideration" test is not a product of the common law, but rather was developed by federal courts in litigation involving ERISA claims for breach of fiduciary duty. In *Vartanian,* this circuit adopted a mode of analysis utilized by the Third Circuit in *Fischer v. Philadelphia Elec. Co.,* 96 F.3d 1533 (3d Cir.1996), *cert. denied,* 520 U.S. 1116, 117 S.Ct. 1247, 137 L.Ed.2d 329 (1997)("*Fischer II*"). We said we adopted the *Fischer II* approach because of the "conflicting interests that ERISA seeks to reconcile." *Vartanian,* 131 F.3d at 271. We pointed out that Congress had sought in ERISA to protect employee pensions and other benefits while not discouraging employers from offering such benefits in the first place. *See id.* ("Indeed, it is not implausible that imposing a threshold lower than that of *Fischer II* would frustrate the very purposes for which a severance program typically is designed: to reduce a workforce by voluntary means"). We saw the "serious consideration" test as "delineat[ing] the point at which one form of reasonable employer behavior, namely the confidential consideration of an employee severance proposal, is overbalanced by the corresponding fiduciary duty imposed by ERISA." *Vartanian,* 131 F.3d at 268. Under the test, only those changes in benefits that have reached a level of "serious consideration" and are thus "material" to an employee's decision whether to retire must be disclosed to employees. *See Fischer II,* 96 F.3d at 1538 (equating "materiality" for purposes of ERISA fiduciary duty analysis with "serious consideration"). An employer retains its prerogative to consider options confidentially in the normal course of business, and has a duty to disclose its plans, where necessary to prevent an affirmative representation from being misleading, only at a point when a specific benefit plan exists, its implementation is being discussed, and senior management are involved.

Even though it had earlier determined that the MassMutual VTP did not qualify as an ERISA "plan," the district court applied the *Vartanian* "serious consideration" test because it concluded that Massachusetts and federal law do not differ with regard to the standard for "materiality." *Rodowicz*, 3 F.Supp.2d at 1487.[7] We agree that the basic standard of "materiality" is the same under federal and state law—"whether 'a reasonable man would attach importance [to the facts not disclosed] in determining his choice of action in the transaction in question,'" *Zimmerman*, 31 Mass.App.Ct. at 78, 575 N.E.2d 70 (quoting *Rogen v. Ilikon Corp.*, 361 F.2d 260, 266 (1st Cir.1966)) (bracketed material in original). But "serious consideration" is a special gloss on the common law materiality standard that has been developed by federal courts in ERISA breach of fiduciary duty cases expressly to serve the interests implicated by ERISA. Because of those weighty interests, the "serious consideration" test differs from the common law materiality standard in various ways.

For example, the "serious consideration" test may require more of a plaintiff in terms of proof than does the common law materiality standard. Under Massachusetts law, a misstatement concerning retirement benefits is "material" if it is more likely than not that it would lead a reasonable employee to retire. But by requiring a plaintiff to prove the existence of all three elements under the "serious consideration" standard, courts require that there be a "substantial likelihood" that the employee would not have retired had the statement not been made. *Compare Fischer v. Philadelphia Electric Co.*, 994 F.2d 130, 135 (3d Cir.) (defining "materiality," for purposes of "serious consideration test, as 'substantial likelihood' that the misrepresentation would mislead a reasonable employee"), *cert. denied*, 510 U.S.

1020, 114 S.Ct. 622, 126 L.Ed.2d 586 (1993) ("*Fischer I* ") *with Zimmerman*, 31 Mass. App.Ct. at 78, 575 N.E.2d 70 ("materiality" under Massachusetts law defined as whether reasonable man "would attach importance [to the fact not disclosed]").

Further, to satisfy the "serious consideration" test, a plaintiff must demonstrate that a misrepresentation concerns a specific change in benefits that is actively under consideration by persons in senior management with the authority to implement the change. Then and only then can an employee be said to have reasonably relied upon a misstatement concerning changes in benefits such that his or her claim may reach the jury. *See, e.g., Hockett v. Sun Company, Inc.*, 109 F.3d 1515, 1524 (10th Cir.1997) (holding that misrepresentations concerning a severance plan did not become material under "serious consideration" test until a meeting was convened that "gathered together the heads of all departments related to employee benefits" to discuss a specific proposal). By contrast, a trial court applying common law principles may withdraw a misrepresentation case from the jury only upon concluding that the fact misrepresented "is *so obviously unimportant* that the jury could not reasonably find that a reasonable man would have been influenced by it." Restatement (Second) of Torts § 538(2)(a), comment e (emphasis supplied).

In our view, a reasonable employee could "attach importance" to and be influenced by misstatements that fail to meet the strict requirements of the "serious consideration" test. A statement, for example, that no change in benefits is being contemplated made at a time when several proposals urging such changes are on the table but, as yet, senior management with the authority to implement a change has

---

7. Although the district court stated in its opinion that "[p]laintiffs and defendants agree that the definition of 'material' is the same under both federal law and the law of the Commonwealth of Massachusetts," 3

F.Supp.2d at 1487, our review of the record indicates that plaintiffs have consistently argued that the "serious consideration" test is not applicable to their state common law claims.

not yet chosen a specific plan for implementation cannot be said to be "so obviously unimportant that the jury could not reasonably find that a reasonable man would have been influenced by it." In such a case, the existence of the proposals and the attendant discussion might reasonably be expected to influence a decision with respect to retirement.

We hold that it was error for the district court to apply the "serious consideration" test to plaintiffs' state law claims. The Massachusetts Supreme Judicial Court may someday be persuaded to apply the "serious consideration" test in situations analogous to this, but it has not yet done so. Until such time, the standard for "materiality" is as set forth in Massachusetts case law and the Restatement (Second) of Torts. *Cf. Adams v. Coveney,* 162 F.3d 23, 26 (1st Cir.1998) (concluding that Massachusetts courts would not necessarily adopt federal "responsible person" standard in determining whether individual had duty to pay withholding and meals taxes, and applying instead state common law standard). Applying that standard, we cannot say that all of the plaintiffs' claims fail on summary judgment.

■ Under Massachusetts law, plaintiffs had to demonstrate that MassMutual (1) made false statements of material fact (2) to induce them to retire when they did, and (3) that they reasonably relied on those statements to their detriment. *Zimmerman,* 31 Mass.App.Ct. at 77, 575 N.E.2d 70. If plaintiffs failed to demonstrate any one of these elements, their misrepresentation claims must be dismissed.[8] The statements allegedly relied upon by plaintiffs must be ones of fact, not of "expectation, estimate, opinion, or judgment." *Id. See also Powell v. Rasmussen,* 355 Mass. 117, 118, 243 N.E.2d 167 (1969). "A representation is one of opinion if it expresses only ... the belief of the maker, *without certainty,* as to the existence of the fact." Restatement (Second) of Torts § 538A (1977) (emphasis supplied). *See McEneaney v. Chestnut Hill Realty Corp.,* 38 Mass.App.Ct. 573, 574, 650 N.E.2d 93 (1995). We agree with the district court that it is too much of "a stretch" to characterize many of the statements upon which plaintiffs rely as ones of fact. *Rodowicz,* 3 F.Supp.2d at 1481.

■ The statements allegedly relied upon by plaintiffs must be ones of fact, not of "expectation, estimate, opinion, or judgment." *Id. See also Powell v. Rasmussen,* 355 Mass. 117, 118, 243 N.E.2d 167 (1969). "A representation is one of opinion if it expresses only ... the belief of the maker, without certainty, as to the existence of the fact." Restatement (Second) of Torts § 538A (1977)(emphasis supplied). *See McEneaney v. Chestnut Hill Realty Corp.,* 38 Mass.App.Ct. 573, 574, 650 N.E.2d 93 (1995). We agree with the district court that it is too much of "a stretch" to characterize many of the statements upon which plaintiffs rely as ones of fact. *Rodowicz,* 3 F.Supp.2d at 1481.

■ The statements allegedly made to plaintiffs Binsky, Buck, Stevens, Ziemba, and Faniel "fall[ ] within the ordinary rule that false statements of opinion, of conditions to exist in the future, or of matters promissory in nature" are not actionable in a claim for misrepresentation. *Yerid v. Mason,* 341 Mass. 527, 530, 170 N.E.2d 718 (1960).[9] The statements made

---

8. We will affirm a correct result reached by the court below "on any independently sufficient ground made manifest by the record." *Palmacci v. Umpierrez,* 121 F.3d 781, 792 (1st Cir.1997).

9. As noted, *supra,* Binsky was told by Priscilla Dill, a retirement counselor, that "I really don't think there will be anything." Dill told Buck that she was "not aware of anything coming down the road." Buck was also told by Michael Walker, her former boss, that "anything can happen, but we have no definite plans (to adopt enhanced benefits)." Pat Ogoley, a retirement counselor, told Stevens in April, 1992, that she did not know whether there would be any early retirement incentives. In a conversation that took place in the hallway, plaintiff Ziemba was told by a senior officer at the Company that the officer did not

to these plaintiffs were cautionary in nature and represented nothing more than the opinion or belief of the declarant as to the prospect of future changes in retirement benefits.[10] *See id.* at 530–31, 170 N.E.2d 718 (home seller's statements to the effect that buyers "would have no further trouble with water" in cellar were expressions of strong belief, not statements of fact). Some of the statements relied upon were no more than ordinary workplace gossip, which is plainly not actionable. Thus, to the extent that they are premised upon these statements, the misrepresentation claims of plaintiffs Binsky, Buck, Stevens, Ziemba, and Faniel were properly dismissed as they did not meet the "statement of fact" requirement under Massachusetts law.[11]

■ We reach a similar conclusion insofar as plaintiffs' misrepresentation claims are each based upon the statements made by President Wheeler during the "state of the company" speech, as reported in the *MassMutual News.* As the district court stated:

> Bromides in a company newsletter about MassMutual's good financial shape and the President's intention not to make any fundamental changes, cannot be construed as affirmative representations with regard to retirement benefits. To hold otherwise would transform any effort to comment generally on a company's performance into a minefield of potential liability.

*Rodowicz,* 3 F.Supp.2d at 1488. We agree that the statements reported in the Company newsletter did not constitute representations, much less material misrepresentations, concerning the Company's plan with regard to retirement benefits. Thus, to the extent that plaintiffs' claims are based upon statements in the company newsletter, they were properly dismissed.

■ Certain of plaintiffs' misrepresentation claims fail for an additional reason. Plaintiffs sued MassMutual based upon alleged material misrepresentations made by certain individual employees concerning retirement benefits. In Massachusetts, an employer may be held liable for the tortious acts of an employee if the acts were committed within the scope of the employment. *See Worcester Ins. Co. v. Fells Acres Day School, Inc.,* 408 Mass. 393, 404, 558 N.E.2d 958 (1990). Conduct of an employee is within the scope of employment if it is of the kind he is employed to perform. *Wang Laboratories, Inc. v. Business Incentives, Inc.,* 398 Mass. 854, 859, 501 N.E.2d 1163 (1986). In order for plaintiffs to hold MassMutual liable for the alleged misrepresentations made by its employees, plaintiffs must demonstrate

---

know whether an enhanced retirement package would be offered, but that that was not what he had heard. In response to plaintiff Faniel's statement that it "doesn't look like there [will] be any changes," Dill stated: "I don't know, I don't think so, I haven't heard anything."

10. There are exceptions to the rule that statements of opinion are not actionable. Statements of opinion may be actionable where the defendant misrepresents his actual present intent to perform a future act. *See Barrett Associates, Inc. v. Aronson,* 346 Mass. 150, 190 N.E.2d 867 (1963). They may also be actionable where the parties have unequal knowledge of the subject matter in question *and* the future event is fully within the declarant's control. *See id.* Neither exception applies in this case. None of the defendants is alleged to have misrepresented a present intent to

perform a future act. Further, while it is true that certain of the declarants here may have been understood by plaintiffs to possess greater knowledge of the likelihood of a change in benefits, there is no evidence that such change was "fully within the declarant's control," such that the second exception would apply. *Cf. Briggs v. Carol Cars, Inc.,* 407 Mass. 391, 396, 553 N.E.2d 930 (1990) (car dealer's representation that car was in "good condition" was construed to be statement of fact).

11. Further, even if these statements could be construed as statements of fact, there is no evidence in the record to suggest that the statements were false when made. Hence, at least as to these plaintiffs, we agree with the district court that "the undisputed facts confirm" that no false statements of any kind were made. *Rodowicz,* 3 F.Supp.2d at 1487.

that the declarant had actual or, at least, apparent authority to speak on behalf of the company with respect to retirement benefits. *See, e.g., Hudson v. Mass. Property Ins. Underwriting Ass'n*, 386 Mass. 450, 457, 436 N.E.2d 155 (1982); *see also* Restatement (Second) of Agency § 8 (1957).

 The record demonstrates that MassMutual retirement counselors and Human Resources personnel were cloaked with actual or, at least, apparent authority to speak on behalf of the Company with regard to retirement benefits. *Cf. Fischer I*, 994 F.2d at 134 (benefits counselors possessed apparent authority to provide information and guidance with regard to changes in employee benefits). However, Byron Mattson, Michael Walker, Linda Egan, Kenneth Cardwell, and Robert Pouliot, upon whose statements certain plaintiffs claim to have relied, were neither retirement counselors nor Human Resources personnel, and therefore did not possess actual authority to speak on behalf of the Company with regard to employee benefits.[12] Further, there is no evidence in the record that any of these employees had apparent authority to answer questions on behalf of the Company concerning changes in retirement benefits. To the contrary, as plaintiff Faniel, for example, stated in his deposition, employees were aware that retirement counselors were the Company representatives "that you were to go to if you had any questions about retirement benefits." With regard to employees Matson, Walker, Egan, Cardwell, and Pouliot, no evidence even suggests "conduct by the principal [that] ... causes a third person reasonably to believe that a particular person ... has [such] authority." *Neilson v. Malcolm Kenneth Co.*, 303 Mass. 437, 441, 22 N.E.2d 20 (1939). Accordingly, the statements made by these employees to, respectively, plaintiffs Binsky, Buck, Kennedy, Lemon, and Ziemba were not made on behalf of the Company and, for that reason, were not actionable.

 We also conclude, although again on somewhat different grounds than those relied upon by the district court, that summary judgment was properly granted with regard to the equitable estoppel claims brought by plaintiffs Binsky, Buck, Kennedy, Ziemba, and Faniel.[13] Under an equitable estoppel theory, plaintiffs must demonstrate that they relied upon a misrepresentation of past or present material facts. *See Boylston Development Group, Inc. v. 22 Boylston Street Corp.*, 412 Mass. 531, 591 N.E.2d 157 (1992). *See also* Restatement (Second) of Torts § 872 (tort liability based upon equitable estoppel requires "definite misrepresentation of

---

**12.** Mattson and Pouliot were senior officers in the Company, but neither had any responsibility with regard to Human Resources in general, or employee benefits in particular. Further, as MassMutual points out, at the time the VTP was announced, the Company had more than two hundred "senior" and "executive" officers. It would stretch the bounds of apparent authority too far to conclude that MassMutual employees could reasonably conclude that each of those officers had authority to speak on behalf of the Company with regard to retirement benefits. Indeed, plaintiffs acknowledged at their depositions that it was understood by employees that retirement counselors were the individuals within the Company to whom they should address any questions concerning retirement benefits. Walker and Egan were supervisors, but again did not have any responsibility with regard to employee benefits. Similarly, Kenneth Cardwell was an employee with no responsibility whatever for employee benefits.

**13.** In addition to claims sounding in equitable estoppel, plaintiffs' Third Amended Complaint, which the district court treated as the operative pleading for purposes of summary judgment, also contained counts based upon promissory estoppel and breach of the covenant of good faith and fair dealing. The district court dismissed plaintiffs' estoppel claims on the ground that they failed the "serious consideration" test. On appeal, plaintiffs contest only the dismissal of their equitable estoppel claims. Thus, they have abandoned any challenge to the district court's dismissal of their promissory estoppel and breach of covenant claims. *See King v. Town of Hanover*, 116 F.3d 965, 970 (1st Cir.1997) (claims not argued in appeal are deemed waived).

fact"). As stated, many of the alleged representations upon which plaintiffs claim to have relied were mere statements of opinion or belief, not definite representations concerning past or present facts. Still others were made by employees without the requisite authority to bind the Company in the area of employee benefits. Hence the district court properly granted summary judgment as to most of plaintiffs' equitable estoppel claims.

■ The preceding discussion disposes of the claims of plaintiffs Binsky, Buck, Kennedy, Ziemba, and Faniel. However, we conclude that three of the eight named plaintiffs—Rodowicz, Lemon, and Stevens—have viable misrepresentation and estoppel claims under Massachusetts law. Plaintiff Rodowicz alleges that in late August or early September, 1992, Laura Cowles, an employee in MassMutual's Corporate Human Resources department, told him that the Board of Directors had decided there would be no changes in the retirement package.[14] A jury could reasonably find that Cowles possessed the requisite authority to speak for the Company with regard to retirement benefits. Further, under Massachusetts law, Cowles's statement, if made, that the Board of Directors had decided there would be no retirement package changes could be found to be an assertion of fact as to the Board's action. It is not a statement of mere opinion or belief. Finally, again applying Massachusetts law, a jury could reasonably find that Cowles's statement in September 1992 that the Board had decided there would be no changes in retirement benefits was material and that Rodowicz reasonably relied upon it. Thus, plaintiff Rodowicz is entitled to present his misrepresentation and equitable estoppel claims to a jury, although, as said *supra*, he cannot rely upon the statements made by President Wheeler in the "state of the company" speech.

■ We reach the same conclusion with regard to plaintiffs Lemon and Stevens. In the summer of 1992, Lemon was allegedly told by Jack Wilson, a Human Resources employee with responsibility for employee benefits, that there would be no enhanced benefit package. Plaintiff Stevens was told by Lois DeGray, a retirement counselor, that there would not be any enhanced benefit package or "golden handshake." These are statements of fact as to which a reasonable jury could find that Wilson and DeGray were authorized to bind the Company. A reasonable jury could also find that the statements were material under the Massachusetts common law standard and that plaintiffs Lemon and Stevens reasonably relied upon the representations. Thus, like plaintiff Rodowicz, plaintiffs Lemon and Stevens are also entitled to present their state common law claims to a jury.

■ In saying as we have at several places that the claims of these three plaintiffs could be the basis for recovery in a jury trial, we do not in any way mean to suggest that the plaintiffs will or should necessarily prevail. Issues of fact and assessment remain to be resolved and, in addition, the evidence at trial may vary from what we have assumed. But we are required on summary judgment to view the issue from the standpoint of the party resisting summary judgment and while the case may be a close one even from that vantage, we think that the three plaintiffs in question have crossed the threshold and that their state claims cannot be resolved against them at this stage.

## IV. CONCLUSION

To summarize, we *affirm in part and reverse in part* the district court's grant of summary judgment in favor of MassMutual. We *affirm* the district court's dismissal of plaintiffs' ERISA claims. We *affirm* the district court's grant of summary judg-

**14.** At the time he retired, Rodowicz had accumulated sixty days of excess vacation time that he could have taken to extend his retire-ment until January 1, 1993, thus rendering him eligible for the VTP.

ment in favor of MassMutual with regard to the Massachusetts common law claims of plaintiffs Binsky, Buck, Kennedy, Ziemba, and Faniel, but *reverse* the grant of summary judgment with regard to the state law claims of plaintiffs Rodowicz, Lemon, and Stevens. The cause is remanded for further proceedings consistent with this opinion.

*So ordered. Each party to bear its own costs.*